FILED
United States Court of Appeals
Tenth Circuit

July 12, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDWARD BENITO ARMIJO,

Defendant - Appellant.

No. 09-1533

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:09-CR-00247-PAB-1)**

---

Jessica E. Yates (Neil Peck with her on the briefs), Snell & Wilmer L.L.P., Denver, Colorado, for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (David M. Gaouette, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I.  INTRODUCTION

Edward Benito Armijo pleaded guilty to a single count of being a felon illegally in possession of a firearm.  18 U.S.C. § 922(g)(1).  The Presentence Investigation Report ("PSR") concluded Armijo's base offense level was twenty-four because he had two prior felony convictions for crimes of violence.  U.S.S.G. § 2K2.1(a)(2) (2008)[1] (setting base offense level of twenty-four for unlawful possession of a firearm by a defendant with two previous felony convictions for crimes of violence); *id.* § 4B1.2(a) (defining crime of violence).  In support of the application of § 2K2.1(a)(2), the PSR identified Armijo's 1998 felony menacing conviction, Colo. Rev. Stat. § 18-3-206, and his 2002 manslaughter conviction, Colo. Rev. Stat. § 18-3-104(a).  Armijo objected to the application of § 2K2.1(a)(2), asserting neither his felony menacing conviction nor his manslaughter conviction constituted a crime of violence.  The district court rejected Armijo's objections, concluding both predicate felonies were crimes of violence for purposes of § 2K2.1(a)(2).

Armijo asserts the district court erred in treating his Colorado convictions as crimes of violence for purposes of § 2K2.1(a)(2).  Furthermore, for the first time on appeal, he argues the district court erred in considering his felony menacing conviction for the additional reason that the conviction is stale.  *See*

---

[1]Armijo was sentenced pursuant to the 2008 version of the Sentencing Guidelines.  Unless otherwise noted, all further references to the Guidelines are to the 2008 version.

U.S.S.G. § 2K2.1 cmt. n.10 (providing that for purposes of § 2K2.1(a)(2) "use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)"); *id.* § 4A1.2(e) (providing that prior convictions not exceeding "one year and one month" that were not "imposed within ten years of the defendant's commencement of the instant offense" are not counted for purposes of § 4A1.1); *id.* § 4A1.1 cmt. n.3 (same). Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court concludes Armijo's manslaughter conviction is not a crime of violence as that term is defined in the Guidelines. Armijo's felony menacing conviction, on the other hand, is a crime of violence for purposes of the Guidelines. Because this matter must be remanded for resentencing, and because the facts surrounding the sentencing proceedings on the felony menacing conviction in Colorado state court are not fully developed, we decline to resolve whether Armijo's menacing conviction is stale and thus not to be considered in calculating Armijo's base offense level. Instead, that matter can be fully adjudicated on remand to the district court. Accordingly, we **remand** this matter to the district court to conduct further proceedings consistent with this opinion.

## II. ANALYSIS

This court reviews sentences for reasonableness under a deferential abuse-of-discretion standard. *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008). For its sentencing decision to be procedurally reasonable, a district court must, *inter alia*, correctly compute the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation omitted). Each of the issues Armijo raises on appeal implicates only the procedural reasonableness of his sentence. Accordingly, this court focuses exclusively on the question whether the district court erred in calculating Armijo's advisory Guidelines range

### A. Crime of Violence

Armijo contends the district court erred in concluding his Colorado state felony menacing conviction and his Colorado state manslaughter conviction are crimes of violence for purposes of § 2K2.1(a)(2). This court reviews de novo the district court's conclusion that Armijo's Colorado state felony convictions constitute crimes of violence for purposes of the Guidelines. *United States v.*

*Vigil*, 334 F.3d 1215, 1218 (10th Cir. 2003). In interpreting the Guidelines, this court looks "at the language in the guideline itself, as well as at the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission." *United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) (quotation omitted). "Commentary to the Guidelines is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* (quotations omitted).

Section 2K2.1(a)(2) establishes a base offense level of twenty-four "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2).[2] "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." *Id.* § 2K2.1 cmt. n.1. Section 4B1.2, in turn, defines "crime of violence" as follows:

> (a)  The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

---

[2]If, on the other hand, Armijo "committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense," his base offense level is 20. U.S.S.G. § 2K2.1(a)(4)(A). Assuming neither of Armijo's prior Colorado state felony convictions counts as a crime of violence, his base offense level is 14. *Id.* § 2K2.1(a)(6).

>    (2)    is burglary of a dwelling, arson, or
>            extortion, involves use of explosives, or
>            otherwise involves conduct that presents a
>            serious potential risk of physical injury to
>            another.

*Id.* § 4B1.2(a).  The application notes to § 4B1.2(a) further provide that

> "Crime of violence" includes murder, manslaughter, kidnapping,
> aggravated assault, forcible sex offenses, robbery, arson, extortion,
> extortionate extension of credit, and burglary of a dwelling.  Other
> offenses are included as "crimes of violence" if (A) that offense has
> as an element the use, attempted use, or threatened use of physical
> force against the person of another, or (B) the conduct set forth ( *i.e.*,
> expressly charged) in the count of which the defendant was convicted
> involved use of explosives (including any explosive material or
> destructive device) or, by its nature, presented a serious potential risk
> of physical injury to another.

*Id.* § 4B1.2 cmt. n.1.

"In determining whether a conviction qualifies as a crime of violence under

§ 4B1.2, we apply a categorical approach that looks to the words of the statute

and judicial interpretations of it, rather than to the conduct of any particular

defendant convicted of that crime." *McConnell*, 605 F.3d at 825 (quotations

omitted).  "As the Supreme Court recently explained, under the categorical

approach we consider the offense generically, that is to say, we examine it in

terms of how the law defines the offense and not in terms of how an individual

offender might have committed it on a particular occasion." *United States v.*

*Rooks*, 556 F.3d 1145, 1147 (10th Cir. 2009) (quotation omitted).  If the criminal

statute setting out the predicate felony "is ambiguous, or broad enough to

encompass both violent and nonviolent crimes, we employ the so-called 'modified categorical approach' which allows analysis of certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the sentencing court." *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009) (quotations and citation omitted). Review under the modified categorical approach "does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *Id.* (quotation omitted).

### 1. Felony Menacing

According to Colorado law, "[a] person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." Colo. Rev. Stat. § 18-3-206. Menacing is a felony if it is accomplished by the use or threatened use of a "deadly weapon." *Id.* Colorado defines the term "deadly weapon" broadly to include not only guns, knives, and bludgeons, but also "[a]ny other weapon, device, instrument, material, or substance, whether animate or inanimate." *Id.* § 18-1-901(e).

As Armijo recognizes, this court previously concluded Colorado felony menacing is categorically a violent felony for purposes of the Armed Career

Criminal Act ("ACCA").[3] *United States v. Herron*, 432 F.3d 1127, 1138 (10th Cir. 2005). *Herron* recognized that the use-of-force element of Colorado felony menacing is symmetrical with the ACCA's use-of-force requirement:

> [The defendant's felony menacing] convictions were undoubtedly for violent felonies. He "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon." [Colo. Rev. Stat. § 18-3-206]. This conduct easily satisfies the requirement of "the threatened use of physical force against the person of another," under the ACCA. 18 U.S.C. § 924(e)(2)(B)(i). "Knowingly placing someone in fear . . . by the use of a deadly weapon" certainly constitutes threatening someone. [The defendant] argues that menacing cannot be a violent felony because under Colorado law the term *deadly weapon* is defined so broadly as to include a fist, foot, or whiskey bottle, so that menacing includes conduct such as telling someone over the telephone "that one intends to punch or kick them the next day, or within the next few hours, depending on the interpretation of the phrase 'imminent.'" But this observation is

---

[3]The definition of "violent felony" under the first-prong of the ACCA and "crime of violence under § 4B1.2(a) are nearly identical. *Compare* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another), *with* U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another"). Accordingly, this court has looked to interpretations of the ACCA to guide our interpretation of § 4B1.2(a). *United States v. Charles*, 576 F.3d 1060, 1068 n.2 (10th Cir. 2009) ("[T]he applicable Guidelines definition of a crime of violence[] is almost identical to the ACCA's definition of violent felony. Accordingly, we have said . . . the Supreme Court's analysis under the ACCA applies equally to the sentencing guidelines." (quotations and citations omitted)); *see also United States v. Williams*, 559 F.3d 1143, 1147 n.7 (10th Cir. 2009); *United States v. Dennis*, 551 F.3d 986, 988-89 (10th Cir. 2008). Such an approach makes perfect sense given that § 4B1.2's current definition of crime of violence was "derived from 18 U.S.C. § 924(e)". U.S.S.G. app. C, amend. 268.

beside the point. A threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon.

*Id.* (citation omitted).

Armijo argues, however, that *Herron* does not control the outcome of this appeal because it failed to recognize felony menacing could be committed through the use of a material or substance such as poison or pathogen. *See* Colo. Rev. Stat. § 18-1-901(e) (defining "deadly weapon" to include, *inter alia*, a "material[] or substance, whether animate or inanimate"); *People v. Shawn*, 107 P.3d 1033, 1036 (Colo. App. 2004) (holding that HIV is a deadly weapon for purposes of the Colorado felony menacing statute). In particular, Armijo asserts this court's post-*Herron* decision in *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1195 (10th Cir. 2008), makes clear that "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*."

We conclude Armijo's reliance on *Rodriguez-Enriquez* is unavailing. Given that this court has concluded analysis under the ACCA applies equally to § 4B1.2(a), *Charles*, 576 F.3d at 1068 n.2, we specifically adopt the reasoning in *Herron* to hold Colorado felony menacing is categorically a crime of violence under § 4B1.2(a)(1). This is true despite the inclusion of poisons and pathogens in Colorado's definition of deadly weapon. In so holding, this court joins the Eighth and Ninth Circuits in rejecting arguments regarding Colorado felony

menacing identical to those raised by Armijo on appeal.  *United States v. Melchor-Meceno*, 620 F.3d 1180, 1185-86 (9th Cir. 2010) ("One cannot knowingly place another in fear of being poisoned [under Colorado law] without threatening to force the poison on the victim."); *United States v. Forrest*, 611 F.3d 908, 910-11 (8th Cir. 2010) ("A threat that creates a fear 'of imminent serious bodily injury' is a threat of physical force.").

Armijo asserts the Colorado Court of Appeals decision in *Shawn* stands for the broad proposition that poisons or pathogens always satisfy the use-of-a-deadly-weapon element of Colorado felony menacing, no matter how the poison or pathogen is used or threatened to be used.  He also asserts this court's decision in *Rodriguez-Enriquez* stands for the broad proposition that use, or threatened use, of a poison or pathogen can never satisfy the physical force requirement of § 4B1.2(a)(1).  Thus, according to Armijo, Colorado felony menacing is categorically not a crime of violence.  Armijo's descriptions of the holdings of these cases are less than accurate.

This court in *Rodriguez-Enriquez* was tasked with deciding whether the Colorado crime of assault two (drugging a victim) is a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[4]  518 F.3d at 1192.  A person commits

---

[4]Section 2L1.2, the Guideline relating to certain immigration offenses, also utilizes the term "crime of violence" and defines it as, *inter alia*, an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2
(continued...)

the crime of assault two (drugging a victim) if "[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm." Colo. Rev. Stat. § 18-3-203(1)(e). Importantly, there is no requirement that a drug or poison be delivered to the victim through the use of physical force; instead, the surreptitious administration of the substance through drink or food satisfies the elements of Colorado assault two (drugging a victim). *Rodriguez-Enriquez*, 518 F.3d at 1194-95. Accordingly, *Rodriguez-Enriquez* held as follows:

> Turning to the statute at issue in this case, Colo. Rev. Stat. Ann. § 18-3-203(1)(e), it criminalizes harm caused by the nonconsensual administration of "a drug, substance, or preparation." The harm is caused by chemical action on the victim's body. Although there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force. Therefore, we hold that assault two (drugging a victim) is not a crime of violence under § 2L1.2(b)(1)(A)(ii).

*Id.* at 1195.

Unlike the statute at issue in *Rodriguez-Enriquez*, Colorado felony menacing requires as an element the use or threatened use of physical force. Colo. Stat. Ann. § 18-3-206. This is true even if the deadly weapon in question is

---

[4](...continued)
cmt. n.1.(B)(iii). This aspect of § 2L1.2's definition of crime of violence is identical to the definition of crime of violence set out in § 4B1.2(a)(1).

-11-

a poison or pathogen. In *Shawn*, the Colorado Court of Appeals determined that HIV is a deadly weapon. 107 P.3d at 1036. It began by noting that "any object or substance can be a deadly weapon within the meaning of [Colorado law] if it is used in a manner capable of producing death or serious bodily injury." *Id.* at 1035. Nevertheless, "the object or substance must be used or intended to be used as a weapon." *Id. Shawn* next noted that "the dangers of HIV are widely known" and the virus is "capable of causing injury or harm to another person." *Id.* at 1036. Finally, the Colorado Court of Appeals concluded a reasonable jury could find the defendant's statement that he was "HIV positive" during the course of a physical altercation was a threat of imminent serious bodily injury through the use of a deadly weapon. *Id.* at 1035-36. In reaching that conclusion, however, the court "emphasize[d] that defendant made his menacing statement indicating an intent to harm during a physical altercation." *Id.* at 1036; *see also id.* at 1035 ("The victim . . . testified that defendant scratched and pinched the victim on both arms with his fingernails; defendant broke the skin on the victim's right arm; defendant stated, 'I'm HIV positive, let go of me, let go of me'; and defendant repeated the assertion that he was HIV positive.").

Thus, an examination of *Rodriguez-Enriquez* and *Shawn* refutes Armijo's broad assertion that this court can no longer consider Colorado felony menacing as categorically a crime of violence because poisons and pathogens qualify as deadly weapons under Colorado law. Instead, *Rodriguez-Enriquez* stands for the

limited proposition that a Colorado provision criminalizing the surreptitious drugging of a victim does not involve the use of physical force.  318 F.3d at 1195. *Shawn* stands for the limited proposition that a threat to infect the victim with a potentially deadly virus during the course of a physical attack satisfies the elements of Colorado felony menacing.  Neither of these cases casts any doubt on this court's reasoning in *Herron* that led to the conclusion Colorado felony menacing is a violent felony for purposes of the ACCA.  432 F.3d at 1138. Because this court looks to interpretations of the ACCA to guide our interpretation of § 4B1.2(a), *Charles*, 576 F.3d at 1068 n.2, we thus conclude *Herron* compels the determination Colorado felony menacing is a crime of violence for purposes of § 4B1.2(a)(1).  Accordingly, the district court correctly resolved that Armijo's Colorado felony menacing conviction is categorically a crime of violence.[5]

---

[5]The conclusion Armijo's Colorado felony menacing conviction is categorically a crime of violence does not fully resolve whether the district court erred in utilizing the conviction to calculate his offense level.  As set out more fully below, Armijo also argues the district court plainly erred in considering the felony menacing conviction because it is stale.  *See infra* Section II.B.

-13-

### 2. Manslaughter

In Colorado, a person commits manslaughter if he "recklessly causes the death of another person." Colo. Rev. Stat. § 18-3-104(1)(a).[6] To prove a charge of manslaughter, "the prosecution must show that the defendant's conduct caused the death of another and that the defendant: 1) consciously disregarded 2) a substantial and 3) unjustifiable risk that he would 4) cause the death of another." *People v. Hall*, 999 P.2d 207, 217 (Colo. 2000) (emphasis omitted).

At sentencing, Armijo asserted Colorado's version of manslaughter is not a crime of violence for purposes of § 4B1.2(a) because it is not an intentional or purposeful crime. Armijo relied on this court's decision in *United States v. Zuniga-Soto* for the proposition that a crime with a mens rea of mere recklessness is not a crime of violence for purposes of the Guidelines. 527 F.3d 1110, 1123-24 (10th Cir. 2008). In response, the United States asserted the inclusion of manslaughter in application note 1 to § 4B1.2 was definitive. The United States relied on *United States v. Barraza-Ramos* for the proposition a felony automatically qualifies as a crime of violence if it is specifically enumerated in the application notes to a Guideline. 550 F.3d 1246, 1248-49 (10th Cir. 2008). The district court adopted the position advanced by the United States and

---

[6]Alternatively, a person commits manslaughter in Colorado if he "intentionally causes or aids another person to commit suicide." Colo. Rev. Stat. § 18-3-104(1)(b). This provision is not at issue in this case as the parties agree Armijo was convicted under § 18-3-104(1)(a).

concluded Colorado's version of manslaughter, despite its lack of an element of intent or purpose, constitutes a crime of violence because it is a crime delineated in the commentary to § 4B1.2.

This issue comes before the court in a somewhat unusual posture. In arguing Armijo's Colorado manslaughter conviction is a crime of violence for purposes of § 4B1.2(a), the United States neither cites to nor mentions the language of the Guideline. That is, the United States does not contend Colorado's version of manslaughter "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Likewise, the United States does not contend Colorado's version of manslaughter "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a)(2). Instead, the United States focuses exclusively on the fact that the term "manslaughter" is listed as a qualifying crime in application note 1 to § 4B1.2. The reason for the United States's approach is clear: in interpreting the language of, or language identical to that used in § 4B1.2(a), this court has specifically held that only those crimes with a mens rea of intent or purpose qualify as crimes of violence.

For instance, in *Zuniga-Soto*, this court analyzed whether assault on a public servant in violation of the Texas penal code was a crime of violence for purposes of U.S.S.G. § 2L1.2. 527 F.3d at 1114. To qualify as a crime of

-15-

violence for purposes of § 2L1.2, the Texas assault crime had to have "as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); *Zuniga-Soto*, 527 F.3d at 1115.  This language is identical to the first of the two alternate definitions of crime of violence set out in § 4B1.2(a).  *Compare* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), *with id.* § 4B1.2(a)(1).  Relying on numerous Supreme Court and circuit court authorities, *Zuniga-Soto* held unequivocally that "a *mens rea* of recklessness does not satisfy use of physical force requirement under § 2L1.2's definition of 'crime of violence.'"  527 F.3d at 1124 (collecting cases).[7] Likewise, this court has specifically held that the residual clause of the second definition of crime of violence set out in § 4B1.2(a)(2) (*i.e.*, "conduct that presents a serious potential risk of physical injury to another") "is intended to reach purposeful, violent, and aggressive conduct rather than merely negligent or reckless acts."  *United States v. Williams*, 559 F.3d 1143, 1148 (10th Cir. 2009) (holding battery on a police officer under Oklahoma law is a crime of violence); *see also McConnell*, 605 F.3d at 827 (concluding Kansas crime of fleeing and eluding a police officer is a crime of violence for purposes of § 4B1.2(a)(2) because it involves purposeful, violent, and aggressive behavior); *United States v.*

---

[7]This court has reached the same conclusion regarding identical language in the ACCA.  *United States v. Ramon Silva*, 608 F.3d 663, 672-73 (10th Cir. 2010) (holding "apprehension causing aggravated assault" under New Mexico law is a violent felony because it is an intentional or purposeful crime that has as an element the use or threatened use of physical force against the person of another).

*Wise*, 597 F.3d 1141, 1144-47 (10th Cir. 2010) (reaching same conclusion regarding Utah crime of failure to stop at command of a police officer).[8]  Other circuits have similarly held that only crimes involving purposeful or intentional behavior qualify as crimes of violence for purposes of § 4B1.2(a)'s residual clause.  *See, e.g.*, *United States v. Craig*, 630 F.3d 717, 724-25 (8th Cir. 2011); *United States v. Ruvalcaba*, 627 F.3d 218, 224-25 (6th Cir. 2010); *United States v. Coronado*, 603 F.3d 706, 708 (9th Cir. 2010); *United States v. McDonald*, 592 F.3d 808, 811 (7th Cir. 2010).

Perhaps recognizing, for those reasons set out above, that Colorado's version of manslaughter does not fall within either of the two definitions of crime of violence set out in the text of § 4B1.2(a), the United States argues Armijo's manslaughter conviction is a crime of violence simply because manslaughter is a listed crime in application note 1 to § 4B1.2.  U.S.S.G. § 4B1.2 cmt. n.1 ("'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.").  Acknowledging Colorado's choice in terminology

---

[8]This court has reached the same conclusion regarding identical language in the ACCA.  *United States v. Ford*, 613 F.3d 1263, 1272 (10th Cir. 2010) (concluding criminal discharge of a firearm at an occupied building or vehicle is a violent felony under the ACCA's residual clause "because it involves purposeful, violent, and aggressive conduct").

is not determinative,[9] the United States further asserts this court should examine whether Colorado's manslaughter statute roughly corresponds to the definition of manslaughter in a majority of state criminal codes.[10]  Finally, the United States argues that the modern, generic view of manslaughter is that it requires, at a minimum, a mens rea of recklessness.  *See United States v. Gomez-Leon*, 545 F.3d 777, 791 (9th Cir. 2008) (concluding California's crime of vehicular manslaughter while intoxicated is not a crime of violence for purposes of § 2L1.2(b)(1)(1)(iii) because it requires only a mens rea of negligence).  Because Colorado's version of manslaughter comports with the modern, generic view of manslaughter, the United States argues it constitutes a crime of violence.

---

[9]This acknowledgment represents a substantial deviation from the approach advocated by the United States before the district court.  Before the district court, the United States argued the mere fact Colorado labeled the crime "manslaughter," coupled with application note 1 listing "manslaughter" as a crime of violence definitively resolved the matter.

[10]This analytical approach is derived from the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990).  In *Taylor*, the Court undertook to define the term "burglary" in the ACCA.  495 U.S. at 577.  The Court observed that the various states punish identical criminal conduct under different definitions.  *Id.* at 591.  To avoid unwarranted disparities in the application of federal law, the Court held that terminology in the ACCA "must have some uniform definition independent of the labels employed by the various States' criminal codes."  *Id.* at 592.  The Court further concluded Congress "meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States."  *Id.* at 598.  To arrive at that generic definition, the Court consulted a learned treatise and the Model Penal Code to determine the modern understanding of the term "burglary."  *Id.*

Although the United States's argument is not without some modicum of analytical force,[11] we conclude it is simply untenable to read manslaughter as set out in application note 1 to § 4B1.2 as encompassing those versions of the crime with a mens rea of recklessness, when this court has unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior.[12] *See, e.g.,*

---

[11]*See United States v. Peterson*, 629 F.3d 432 (4th Cir. 2011). In *Peterson*, the Fourth Circuit determined that North Carolina's version of involuntary manslaughter is not a crime of violence because it "did not have any requirement of intent or *mens rea*." *Id.* at 433. In so doing, however, the court determined the generic version of manslaughter for purposes of application note 1 to § 4B1.2 "means a criminal homicide that is committed (1) recklessly (i.e., with a conscious disregard of risk) or (2) intentionally if committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse." *Id.* at 436-37. Notably, however, having concluded North Carolina's version of involuntary manslaughter did not even fall within the parameters of the generic understanding of manslaughter, the Fourth Circuit was not forced to confront the question whether construing a crime set out in the commentary to § 4B1.2 to include non-intentional, non-purposeful crimes was consistent with its own rule that the text of § 4B1.2(a) itself only applies to intentional, purposeful crimes. *United States v. Clay*, 627 F.3d 959, 965-66 (4th Cir. 2010).

[12]In so holding, we note this court has conducted an unvarnished *Taylor* analysis with regard to a crime set out in application note 1(B)(iii) to § 2L1.2. *See United States v. Garcia-Caraveo*, 586 F.3d 1230, 1232-33 (10th Cir. 2009) (determining California's version of robbery is the generic version of robbery set out in application note 1(B)(iii) to § 2L1.2). There is however, a significant structural difference between the definitions of crime of violence as used in § 2L1.2(b)(1)(A)(ii) and § 2K2.1(a). The only definition for the term "crime of violence" in § 2L1.2(b)(1)(A)(ii) is the definition set out in application note 1(B)(iii), which defines crime of violence by setting out a list of included crimes followed by a residual clause. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Thus, there is simply no possibility that reading the list of crimes in application note 1(B)(iii) to include generic versions of crimes with a mens rea of mere recklessness could conflict with the text of § 2L1.2(b)(1)(A)(ii). In direct contrast to the structure of

(continued...)

*Williams*, 559 F.3d at 1148*; Zuniga-Soto*, 527 F.3d at 1124. "[J]ust as the Supreme Court limited the broad language in the ACCA to crimes involving 'purposeful, violent and aggressive conduct,' so too is it logical to construe the reference to manslaughter [in the commentary to § 4B1.2(a)] as extending only to those crimes involving the requisite *mens rea*." *United States v. Herrick*, 545 F.3d 53, 60 n.8 (1st Cir. 2008); *cf. United States v. Ossana*, No. 10-2205, 2011 WL 1517492, at *4-*6 (8th Cir. April 22, 2011) (holding that crimes listed in application note 1 to § 4B1.2 must be intentional or purposeful to qualify as crimes of violence). To read application note 1 as encompassing non-intentional crimes would render it utterly inconsistent with the language of § 4B1.2(a), which, as set out at length above, only applies to purposeful or intentional conduct. *Cf. McConnell*, 605 F.3d at 824 (holding that commentary to the Guidelines is not authoritative if it is inconsistent with the Guideline it purports to interpret); *United States v. Morris*, 562 F.3d 1131, 1135 (10th Cir. 2009)

_____

[12](...continued)
§ 2L1.2, the application notes to § 2K2.1 indicate "crime of violence" as used in § 2K2.1 has the meaning set out in § 4B1.2 and its application notes. *Id.* § 2K2.1 cmt. n.1. As noted above, this court has previously determined the text of § 4B1.2 only reaches purposeful, violent, and aggressive conduct. In such a circumstance, to read the crimes listed in application note 1 to § 4B1.2 as reaching convictions involving reckless conduct would render the application note inconsistent with the text of § 4B1.2. Given these structural differences between § 2L1.2 and § 2K2.1, the decision in *Garcia-Caraveo* simply does not speak to the question before the court in this case. Likewise, our decision that the term "manslaughter" as used in application note 1 to § 4B1.2 refers only to what has historically been labeled as voluntary manslaughter does not necessarily apply to the term manslaughter as used in application note 1(B)(iii) to § 2K1.2.

(holding a Guideline and its commentary are inconsistent when "following one will result in violating the dictates of the other" (quotation omitted)). Thus, this court specifically holds that only those versions of manslaughter that involve intentional or purposeful behavior qualify as crimes of violence for purposes of § 4B1.2(a).[13] Because Colorado's version of manslaughter involves only reckless conduct, the district court erred in counting it as a crime of violence in calculating Armijo's offense level and the matter must be remanded to the district court for resentencing.[14]

---

[13] The only other circuit to directly address and resolve this question reached an identical result. *United States v. Woods*, 576 F.3d 400, 410-411 (7th Cir. 2009) (concluding Illinois version of involuntary manslaughter is not a crime of violence for purposes of § 4B1.2(a) because its *mens rea* is mere recklessness).

[14] Our decision in this regard is consistent with the Supreme Court's recent decision in *Sykes v. United States*, No. 09-11311, 2011 WL 2224437 (U.S. June 9, 2011). In *Sykes*, the Court concluded Indiana's crime of using a vehicle to intentionally flee from a law enforcement officer after being ordered to stop is a violent felony for purposes of the ACCA. *Id.* at *3. In so doing, the Court held that the benchmark for evaluating whether any given crime falls within the ACCA's residual clause is potential risk of serious injury to another. *Id.* at *6-*8. Because the Indiana fleeing crime was at least as risky in that regard as burglary and arson, crimes set out in the text of the ACCA, the court concluded it was a violent felony for purposes of the ACCA. *Id.* The Court rejected Sykes's argument that Indiana's fleeing crime was not a crime of violence because it did not involve "purposeful, violent, and aggressive" conduct similar to that at issue in other ACCA cases. *Id.* at *8. According to the Court, its

> sole decision . . . concerning the reach of ACCA's residual clause in
> which risk was not the dispositive factor is *Begay*, which held that
> driving under the influence (DUI) is not an ACCA predicate. There,
> the Court stated that DUI is not purposeful, violent, and aggressive.
> But the Court also gave a more specific reason for its holding. "[T]he
> (continued...)

-21-

**B. Staleness**

As discussed above, the Guideline relating to possession of firearms by prohibited persons sets a defendant's base offense level by reference to, *inter alia*, the defendant's criminal history. U.S.S.G. § 2K2.1(a). Built into § 2K2.1, however, is a limitation on considering "stale" convictions. Application note 10 to § 2K2.1 provides that for the purpose of increasing a defendant's offense level on the basis of past felony convictions, "only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)" can be considered. U.S.S.G. § 2K2.1 cmt. n.10. Criminal history points are assigned based on the

[14](...continued)
conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate." *Begay v. United States*, 553 U.S. 137, 145 (10th Cir. 2008) (analogizing DUI to strict-liability, negligence, and recklessness crimes). By contrast, the Indiana statute at issue here has a stringent *mens rea* requirement. Violators must act knowingly or intentionally.
. . . .
*Begay* involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is, for the reasons stated and as a categorical matter, similar in risk to the listed crimes, it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." [18 U.S.C. § 924(e)(2)(B)(ii)].

*Id.* at *8-*9 (quotation and citations omitted). Thus, *Sykes* makes clear that only those crimes involving intentional conduct fall within the terms of the ACCA's residual clause. Because § 4B1.2's definition of a crime of violence is almost identical to the ACCA's definition of violent felony, the Supreme Court's decision in *Sykes* applies equally to the resolution of this appeal. *Charles*, 576 F.3d at 1068 n.2.

-22-

length of the sentence imposed upon a prior conviction. *Id.* § 4A1.1(a), (b), (c) (assigning three criminal history points for "each prior sentence of imprisonment exceeding one year and one month," two criminal history points for "each prior sentence of imprisonment of at least sixty days not counted in (a)," and one criminal history point "for each prior sentence not counted in (a) or (b)"). A sentence exceeding one year and one month is generally not counted if it was "imposed more than fifteen years prior to the defendant's commencement of the instant offense." U.S.S.G. § 4A1.1 cmt. n.1; *id.* § 4A1.2(e). Lesser sentences are generally not counted if "imposed more than ten years prior to the defendant's commencement of the instant offense." *Id.* § 4A1.1 cmt. nn.2, 3; *id.* § 4A1.2(e)(2).

For the first time on appeal, Armijo argues the district court erred in utilizing his felony menacing conviction in calculating his base offense level because that conviction is stale. The PSR establishes Armijo was sentenced to three years' probation on his felony menacing conviction on October 9, 1998. It further establishes he commenced the instant offense on May 29, 2009, when he was arrested in possession of a Smith and Wesson 9mm pistol. Based on these facts, Armijo asserts the district court plainly erred in considering his felony menacing conviction in calculating his offense level.[15] In the alternative, should

_____

[15]By necessity, Armijo's argument also implies the district court erred in calculating his criminal history category, because he was also assigned one

(continued...)

-23-

this court conclude he can not satisfy the exacting four-part plain error standard,[16] Armijo asserts his trial counsel was ineffective for failing to raise the issue at sentencing.

In its response brief, the United States concedes the probationary sentence originally imposed in Colorado state court on October 9, 1998, is stale and thus not counted under the terms of §§ 2K2.1 cmt. n.1 and 4A1.2(e)(2). It notes, however, that the PSR reveals his probation was "reimposed for 3 years as intensive supervision probation" on August 13, 1999. The United States asserts this Colorado state court action on August 13, 1999, counts as a "prior sentence" for purposes of § 4A1.2(e). Furthermore, because the August 13, 1999, sentence

---

[15](...continued)
criminal history point for the felony menacing conviction. That single criminal history point, however, makes no difference in Armijo's criminal history category. The PSR assigned to Armijo six criminal history points, including the point assessed for the felony menacing conviction. This resulted in a criminal history category of III. U.S.S.G. ch. 5, pt. A (sentencing table). Criminal history category III encompasses those defendants with 4, 5, or 6 criminal history points. *Id.* Thus, even assuming the district court erred in counting the felony menacing conviction, and Armijo's proper total of criminal history points is 5, his criminal history category would remain unchanged. *Id.*

[16]Because Armijo did not raise this argument before the district court he can prevail only if he can satisfy the exacting plain-error standard. To satisfy the plain-error standard, Armijo must demonstrate (1) error, (2) that is clear and obvious, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Steele*, 603 F.3d 803, 808 (10th Cir. 2010). To the extent Armijo argues it is unnecessary to object to preserve procedural sentencing errors, his position is clearly foreclosed by this court's binding precedents. *Id.* (holding that when a defendant does not raise a procedural sentencing objection before the district court, this court's review is limited to plain error).

was imposed within ten years of the commencement of the instant offense, the United States argues Armijo's felony menacing conviction was properly counted as a prior crime of violence for purposes of § 2K2.1.

In reply, Armijo asserts the United States's argument is inconsistent with both the Guidelines and Colorado law. In particular, Armijo notes the very limited information in the PSR reveals the following regarding the Colorado state court's actions on August 13, 1999: "Probation reimposed for 3 years as intensive supervision probation." Although the PSR does not say so specifically, it appears this action followed the filing of a probation violation complaint on June 9, 1999. The Colorado statues governing probation do not use the term "reimpose." Instead, at the time in question, if a court determined a probationer violated a condition of probation, the court had only two choices: "either revoke or continue the probation." Colo. Rev. Stat. § 16-11-206(5) (1999). If probation was revoked, the court could "then impose any sentence or grant any probation pursuant to the provisions [of Colorado law] which might originally have been imposed or granted." *Id.* Even if the court chose to continue probation, it had the inherent power to "reduce or increase the term of probation or alter the conditions or impose new conditions." *Id.* § 16-11-204(4) (1999). Thus, by operation of Colorado law, the actions of the Colorado state court on August 13, 1999, amounted to either a continuation of probation with a modified term, pursuant to Colo. Rev. Stat. §§ 16-11-204(4), -206(5), or the revocation of probation

accompanied by the imposition of a new sentence of probation, pursuant to the terms of Colo. Rev. Stat. § 16-11-206(5).[17]

Armijo argues that under either scenario, it is plain his menacing conviction is stale under the terms of § 4A1.2(e)(2) and thus can not be considered as a prior felony crime of violence for purposes of § 2K1.2(a)(2). If his term of probation was simply continued with modification on August 13, 1999, it is clearly not a sentence imposed within ten years of the instant weapon-possession conviction for purposes of U.S.S.G. § 4A1.2(e). On the other hand, Armijo argues, if his sentence was actually revoked and a new probationary sentence was imposed on August 13, 1999, the matter is controlled by U.S.S.G. § 4A1.2(k)(2)(B):

> Revocation of probation . . . may affect the time period under which certain sentence are counted as provided in [§ 4A1.2(e)]. For the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence . . . ; and (iii) in any other case, the date of the original sentence.

---

[17]This is true even assuming the state court actually utilized the term "reimposed," a term that does not appear to have any basis in Colorado law. *See United States v. Kristl*, 437 F.3d 1050, 1057 (10th Cir. 2006) (holding that this court is "not bound by a state's nomenclature in sentencing," but must instead determine the real world effect of state court action).

Because he was never sentenced to imprisonment totaling more than thirteen months,[18] Armijo contends § 4A1.2(k)(2)(B)(iii) directs that for purposes of determining recency pursuant to § 4A1.2(e)(2) the district court must consider only the date of the original sentence of probation, not the date of any subsequent revocation.

Armijo has made a convincing showing that (1) the district court erred in considering his felony menacing conviction in arriving at his offense level and (2) the district court's error is plain on appeal.[19]  Nevertheless, in light of the extremely limited record and the already explained necessity of remanding the case to the district court for resentencing, *see supra* Section II.A.2., the better course is to direct the parties to fully address, and the district court to resolve upon a complete record and full briefing, this matter on remand.  Such a course of action has the additional salutary effect of mooting the claim of ineffective assistance of trial counsel raised by Armijo in this appeal.  On remand, the United States will be entitled to come forward with additional support for its assertion Armijo's probationary sentence was neither continued nor revoked, but was

---

[18]That is, both his original October 9, 1998, and any potentially new August 13, 1999, sentence was for a term of probation.

[19]The government admirably concedes that should this court conclude Armijo has satisfied the first two components of plain error review, Armijo has established his substantial rights were affected by the error and fundamental fairness requires that he be resentenced.

instead "reimposed," thus rendering U.S.S.G. § 4A1.2(k)(2)(B)(iii) inapplicable.[20]

*See United States v. Kristl*, 437 F.3d 1050, 1058 (10th Cir. 2006) (holding the government has the burden of proving that a prior criminal conviction adds to a defendant's total of criminal history points).

### III. CONCLUSION

This matter is **REMANDED** to the district court to **VACATE** Armijo's sentence and conduct further sentencing proceedings consistent with this opinion.

---

[20]Our mandate in this case is consistent with the general rule that "when a defendant's sentence is vacated on appeal and remanded for new sentencing, the [district] court must begin anew with de novo proceedings." *United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999) (quotation omitted). Nevertheless, we have recognized that absent contrary direction in this court's mandate, the district court has discretion whether to allow further evidence on remand. *Id.* ("[D]e novo resentencing *permits* the receipt of any relevant evidence the court could have heard at the first sentencing hearing. As a consequence, the court on remand has the discretion to entertain evidence that could have been presented at the original sentencing even on issues that were not the specific subject of the remand. (quotations and citation omitted)). In this case, however, it would be fundamentally unfair to preclude the United States from presenting evidence to support its assertion Armijo's felony menacing conviction is not stale. If Armijo had properly raised the issue before the district court in the first instance, the United States could have mustered all relevant evidence on the issue prior to the imposition of sentence. Armijo should not obtain a benefit, in the form of a limited evidentiary record on remand, from the act of failing to properly and timely raise the staleness issue in district court. Thus, on remand, the United States is entitled to develop and present all relevant evidence and argument on the question whether Armijo's felony menacing conviction is stale. *Cf. United States v. Campbell*, 372 F.3d 1179, 1183 (10th Cir. 2004) (holding that because the defendant "alerted the government to the deficiency in its evidence," and because the government "did not seek to cure the deficiency," on remand the United States was not entitled "to make the record that it failed to make in the first instance").

09-1533, <u>United States v. Armijo</u>

**BRISCOE**, Chief Judge, concurring.


I concur in the result.  I join in the majority opinion, except for the discussion of <u>United States v. Rodriguez-Enriquez</u>, 518 F.3d 1191 (10th Cir. 2008), and <u>People v. Shawn</u>, 107 P.3d 1033 (Colo. Ct. App. 2004), at pp. 9-13.  I would conclude simply that we are bound by our prior ruling in <u>United States v. Herron</u>, 432 F.3d 1127 (10th Cir. 2005), which squarely addresses the issue of whether Colorado felony menacing is a crime of violence.  <u>See</u> <u>United States v. Edward J.</u>, 224 F.3d 1216, 1220 (10th Cir. 2000) ("Under the doctrine of stare decisis, [a] panel cannot overturn the decision of another panel of this court barring <u>en</u> <u>banc</u> reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." (internal quotation omitted)).