FILED
United States Court of Appeals
Tenth Circuit

June 30, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSE LUJAN-LOPEZ,

      Defendant - Appellant.

No. 15-1124
(D.C. Nos. 1:14-CV-03159-RBJ and
1:12-CR-00149-RBJ-1 )

(D. Colorado)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Before, **HARTZ**, **TYMKOVICH**, and **MORITZ**, Circuit Judges.
_____

Defendant José Lujan-Lopez seeks a certificate of appealability (COA) to appeal

the denial of his motion for relief under 18 U.S.C. § 2255 by the United States District

Court for the District of Colorado. To obtain a COA he must show "that reasonable

jurists could debate whether (or, for that matter, agree that) the [motion] should have

been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." _Slack v. McDaniel_, 529 U.S. 473, 484 (2000)

(internal quotation marks omitted). In our view, no court could improve upon the district court's thorough, cogent, and sensitive opinion denying relief. To address an argument Defendant makes on appeal, we add only that Defendant could not obtain an offense-level decrease of more than two levels for acceptance of responsibility without a supporting motion by the government. *See* USSG § 3E1.1(b). For the reasons stated in the district court's opinion, which we attach and incorporate, we deny a COA and dismiss the appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Criminal Case No. 12-cr-00149-RBJ

UNITED STATES OF AMERICA,

v.

JOSE LUJAN-LOPEZ,

Defendant.

## ORDER

Jose Lujan-Lopez, representing himself *pro se,* petitions to vacate, modify or correct his sentence for relief pursuant to 28 U.S.C. § 2255.  The essence of his petition is that he received an unduly harsh sentence due to the ineffective assistance of his trial counsel.  For the reasons discussed below, the petition is denied.

## BACKGROUND

Mr. Lujan-Lopez was charged in an indictment filed on April 9, 2012, with Illegal Re-Entry After Deportation Subsequent to a Felony Conviction in violation of 8 U.S.C. § 1326(a) and (b)(1).  His case was set for trial on June 18, 2012.  However, on June 7, 2012, though counsel, he filed a motion to continue the trial in order to retain private counsel.  ECF No. 11. The Court denied that motion at the trial preparation conference the following day but added that if he did retain private counsel and the new lawyer needed more time to prepare, the Court would reconsider.  Transcript [ECF No. 44] at 5-7.  Mr. Lujan-Lopez's public defender then advised the Court that the case would probably be resolved on a plea, but that the defendant's primary concern was with the advice she had given him concerning the federal sentencing guidelines

1

calculation. *Id.* at 9. The Court advised the defendant further concerning the guidelines, and at his lawyer's request, set a tentative date for a change of plea hearing the following week. *Id.* at 10-12. However, on the day set for the change of plea hearing counsel contacted the Court and advised that Mr. Lujan-Lopez had decided to exercise his right to trial by jury. ECF No. 18.

On the morning of trial Mr. Lujan-Lopez filed a *pro se* motion seeking the disqualification of his lawyer, essentially stating that he had lost confidence in her because she wanted him to take a plea and was too busy to defend him properly. He asked the Court to appoint a specific lawyer, Martha H. Eskesen, from the C.J.A. panel. ECF No. 24. He advised the Court, outside the presence of government counsel, that he knew he was guilty and did not wish to go to trial, but "what I would like is for a better deal, for a more fair deal." Transcript [ECF No. 46] at 5. His public defender advised the Court that Mr. Lujan-Lopez continued to be unhappy with her explanation of the guidelines; that he wanted to be treated under the Department of Justice's "Fast Track" program, but was not eligible; and that she had explained the 18 U.S.C. § 3553(a) factors to him. *Id.* at 6. The Court found that there was no indication of an ethical conflict or an irreconcilable breakdown in communications, and that counsel had defended Mr. Lujan-Lopez vigorously, diligently, and competently. The Court denied the motion. *Id.* at 6-8.

The case proceeded to trial. The government presented testimonial and documentary evidence through immigration officers that Mr. Lujan-Lopez had been removed from the United States in July 2009, and that he reentered the United States illegally in December 2011. After the government rested, the Court denied defendant's motion for a judgment of acquittal, and the Court gave Mr. Lujan-Lopez an advisement on his rights with respect to testifying or remaining silent, Mr. Lujan-Lopez elected to testify on his own behalf. Both on direct and cross-

examination he admitted his guilt. Transcript [ECF No. 47] at 264-65. The jury found him guilty.

The Probation Office's Presentence Investigation Report calculated Mr. Lujan-Lopez's Offense Level at 24. ECF No 31 at 6. His Criminal History Level was calculated at V, based on 11 criminal history points from convictions of disorderly conduct/fighting in public, driving under restraint/false reporting, domestic violence/harassment, felony menacing, driving under the influence, and another false reporting. *Id.* at 10-13. The applicable Guideline range for incarceration based on those numbers was 92-115 months. The government and the Probation Office recommended a 92-month sentence. *Id.* at 21. Defendant through counsel objected Offense Level calculation, arguing that he should have been given an additional two-level reduction based upon acceptance of responsibility, which would have made the Guideline range 77-96 months. Counsel also urged the Court to vary below 77 months. The Court denied the objection but did vary downward from the Guideline range and sentenced Mr. Lujan-Lopez to 77 months' imprisonment. ECF No. 36.

Mr. Lujan-Lopez, still represented by the same lawyer from the Office of the Federal Public Defender, appealed. He argued that this Court wrongly failed to grant a two-level reduction of his Offense Level for acceptance of responsibility, and that the Court gave undue weight to his criminal history but did not give meaningful weight to his personal history and characteristics. However, on August 26, 2013 a panel of the United States Court of Appeals for the Tenth Circuit rejected his arguments and affirmed his sentence. ECF No. 52. The Mandate was issued on September 17, 2013.

The present habeas petition, timely filed, is a 56-page document based upon alleged ineffective assistance of his trial lawyer. He asserts four "grounds" on which he claims his

lawyer was ineffective: (1) counsel failed to object to sentencing enhancement based on his prior felony conviction; (2) counsel failed to object to a 16-level enhancement for illegal reentry after deportation; (3) counsel allowed a mitigating factor, namely his cultural assimilation to the United States since childhood, to go unnoticed; and (4) counsel was ineffective at trial. ECF No. 54 at 39-54.

The government has filed a response to the petition. ECF No. 57. The Court denied Mr. Lujan-Lopez's motion for leave to file a reply as untimely. ECF No. 60.

## ANALYSIS

In considering an ineffective assistance of counsel claim the Court follows *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Lujan-Lopez must show (1) that his lawyer's performance was deficient, i.e., below the level expected from a reasonably competent attorney in criminal cases, and (2) that he was prejudiced, meaning that there is a reasonable probability that the result would have been different had his lawyer met professional standards. *Id.* at 687, 694. The Court must construe his motion liberally in view of his *pro se* status. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court holds a hearing unless the motion, files and records "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). With these rules in mind, I turn to his four grounds for relief.

## A. Sentencing Enhancement Based Upon Prior Felony Conviction.

On March 30, 2008 Mr. Lujan-Lopez was stopped for a traffic offense and arrested on suspicion of driving under the influence. The PSI indicates that he was released, later arrested twice on warrants, ultimately pled guilty, and was sentenced on September 19, 2008 to three years' of probation, conditioned upon one year of work release. On the same day he was given

4

the same sentence in a misdemeanor domestic violence case and in a felony menacing case. Each of these sentences was made concurrent with the other two. ECF No. 32 at 10-12.

As best I can tell, Mr. Lujan-Lopez criticizes his lawyer in the present case for not objecting to his receiving criminal history points for each of the three cases. The criticism is undeserved. All three cases were prosecuted in the Boulder County District Court, and warrants for failure to comply or failure to appear ultimately brought the three cases together for sentencing and re-sentencing on the same day. However, the three cases were entirely separate. The offenses occurred on different dates and arose from entirely unconnected facts. As the government points out in its response, the guidelines provide that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). U.S. Sentencing Guidelines Manual § 4.A1.2(a)(2) (2012).

Mr. Lujan-Lopez could count himself as fortunate in receiving concurrent sentences in the three cases. However, each case appropriately received its own criminal history points for purposes of the guidelines calculation in the present case.

## B. Level 16 Enhancement.

Mr. Lujan-Lopez's Offense Level was calculated from a base level of 8 under U.S. Sentencing Guideline s Manual § 2L1.2 (2012). Then 16 levels were added because Mr. Lujan-Lopez was removed from the United States after conviction of a crime of violence. *Id.* § 2L.1.2(b)(1)(A)(ii)). The crime of violence was his State of Colorado conviction of Felony Menacing – Real or Simulated Weapon. According to the PSI, this conviction arose from a fight in a restaurant during which Mr. Lujan-Lopez punched the victim and cut the side of his abdomen with a knife. ECF No. 32 at 11, ¶¶54-56. The Application Notes in the Commentary

to Guideline § 2L1.2 define "crime of violence" to include "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." Cmt. at ¶I(B)(iii). That would include his felony menacing conviction. *See United States v. Villalobos-Varela,* 440 F. App'x 665, 669 (10th Cir. 2011) (Colorado felony menacing is a crime of violence under § 2L1.2(b) of the federal sentencing guidelines). *Cf. United States v. Armijo,* 651 F.3d 1226, 1230-33 (10th Cir. 2011) (Colorado felony menacing is a "crime of violence" within the meaning of § 4B1.2(a)(1) of the guidelines).

Mr. Lujan-Lopez asserts that his trial counsel failed to "investigate into the matter of Defendant's prior convictions." ECF No. 54 at 14. However, he provides no evidence either of counsel's failure to investigate the prior conviction or that an investigation would have revealed anything other than his conviction for felony menacing as reported in the PSI.

### C. Cultural Assimilation.

Mr. Lujan-Lopez was brought by his parents to the United States from Mexico when he was ten years of age. Thereafter he attended school in the United States until he dropped out of Boulder High School in the 12th grade due to disciplinary problems. Unfortunately he began having regular interactions with law enforcement at age 15. He was removed from the United States at age 21 and remained in Mexico for about two and one-half years before he returned to the United States illegally to help care for his five-year old son. The mother of the child is a U.S. citizen, and at the time of the PSI, they remained in a relationship. Mr. Lujan-Lopez's father lives in Mexico. His mother, a brother and a sister live in Colorado, although his mother apparently is not a legal resident. ECF No. 32 at 13-14.

It is fair to say that Mr. Lujan-Lopez became assimilated to living in the United States in the sense that he lived in this country between the ages of 10 and 21 and attended school here for

several years. However, he did not assimilate well to the laws of the United States. He compiled a number of juvenile offenses (one of which would have been a felony, First Degree Criminal Trespass, had he been an adult at the time) and seven adult convictions (including the one felony) in the time he was in this country. He committed another offense after he returned illegally. ECF No. 32 at 6-12.

He is critical of his trial counsel for allowing his cultural assimilation to go unnoticed. ECF No. 54 at 18-22. That is a bad rap. During her argument counsel reminded the Court that Mr. Lujan-Lopez was brought to the United States by his parents at age 10 and went to school here. She also reminded the Court that he returned to this country after being deported because of his five-year old son. ECF No. 48 at 3-4. The Court was well aware of his history in the United States. Unfortunately, however, his history in the United States was marred by a continual pattern of illegal activity beginning at age 15. The bottom line is that the Court does not find trial counsel's election not to put more emphasis on his "cultural assimilation" to reflect any deficiency in her performance, nor does the Court find that placing more emphasis on his cultural assimilation would have made a difference in his sentence.

**D. Trial.**

Although the argument heading was that counsel "Failed to Demonstrate Effective Performance at the Trial Stage," his actual argument has nothing to do with the trial itself. The government's evidence of guilt was overwhelming, and as indicated above, Mr. Lujan-Lopez elected on his own to take the stand and to admit his guilty in front of the jury.

The substance of his argument is that "he was subjected to trial instead of negotiating the case with the government." ECF No. 54 at 23. That is not the case at all. He was offered a plea bargain by the prosecutor, and the Court set a Change of Plea hearing. However, as he has

7

acknowledged, he wanted a better deal than what the government was willing to give him. He apparently blames his lawyer for that, but he provides no support for his implied argument that a different lawyer could or would have been able to negotiate something better. Bear in mind that the government never is required to offer any plea bargain.

Mr. Lujan-Lopez also argues that he should have been granted a two-level acceptance of responsibility reduction of his Guideline Offense Level – an argument that his lawyer pursued vigorously in this Court and on appeal but that Mr. Lujan-Lopez lost in both courts. As indicated, this Court in effect gave him the benefit of a two-level reduction anyway, not because he was entitled to the acceptance of responsibility reduction, but because the Court did not want to see him penalized for exercising his right to have a trial.

## CONCLUSION AND ORDER

Mr. Lujan-Lopez has brought forward no facts that, if believed, would show either that his trial lawyer's performance was deficient or that there is a reasonable probability that a "better" performance would have made a difference in his sentence. The Court finds that the motion, files and records of the case, as discussed in this order, conclusively show that Mr. Lujan-Lopez is not entitled to relief. Therefore, a hearing is not necessary. The motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [ECF No. 54] is denied.

DATED this 24th day of March, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

8