PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES LYLE HERRON,

Defendant - Appellant.

No. 04-1232

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 03-CR-161-B)**

---

Philip A. Cherner, Law Office of Philip A. Cherner, Denver, Colorado, for the Defendant - Appellant.

Martha A. Paluch, Assistant Attorney General (William J. Leone, Acting Attorney General, with her on the brief), Office of the United States Attorney, Denver, Colorado, for the Plaintiff - Appellee.

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

Appellant James Herron was convicted by a jury of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to

235 months' imprisonment. On appeal he argues that the district court made the following errors: (1) it admitted into evidence a redacted version of his parole agreement, which improperly informed the jury of his parole conditions; (2) it denied his motion for a mistrial after a witness indicated that he had a violent history; (3) it overruled his objections to portions of the prosecutor's final argument that appealed to the conscience of the community; (4) at sentencing it treated three prior convictions under the Colorado menacing statute as "violent felonies" under the Armed Career Criminals Act, 18 U.S.C. § 924(e); (5) it denied his request at sentencing for a downward adjustment based on acceptance of responsibility; (6) rather than leaving the matter to the jury, it determined that he had been convicted of violent felonies; and (7) it treated the Sentencing Guidelines as mandatory, contrary to *United States v. Booker*, 125 S. Ct. 738 (2005). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm the conviction and sentence.

## I.    FACTS

On September 7, 2002, Mr. Herron accompanied his girlfriend, Deborah Lynn, and her daughter to a sporting goods store in Grand Junction, Colorado, to purchase a firearm. He was on parole at the time and subject to supervision by the parole division of the Colorado Department of Corrections. Ms. Lynn testified that she sought the firearm for personal protection. Mr. Herron selected

a Bersa .380 handgun from the display case, and the store clerk handed it to him. Both Ms. Lynn and Mr. Herron handled the gun; he pulled the slide and sighted it. He asked the clerk about the gun's features, such as its "knock-down power" and suitability for personal protection. R. Vol. IV at 173. Ms. Lynn testified that the two eventually chose the gun because it fit Ms. Lynn's hand.

Ms. Lynn provided identification as the buyer and filled out the firearm-transaction report. She was cleared as a buyer when the clerk called the Colorado Bureau of Investigation for a background check. Mr. Herron paid for the gun and carried it from the store. The transaction was observed by Greg Thares, a former employee of a private corporation that contracts with the State of Colorado to monitor parolees. Mr. Thares recognized Mr. Herron and reported what he had seen to the local parole office.

After the purchase Mr. Herron and Ms. Lynn went into the desert for target practice. He showed her how to fire the gun, and also fired it himself. They then took the gun back to Ms. Lynn's apartment and placed it in a safe, although they retrieved it later that day so he could show her how to clean it.

Two days later Colorado Parole Officers John Jones and Karen Walters arrested Mr. Herron while he was at work and took him to his apartment. Together with a Grand Junction police officer, they searched the apartment. The Bersa .380 was not there, but they found a receipt for another firearm, a .44

magnum pistol. The second firearm was eventually traced to its buyer, James Epple. The officers visited Mr. Epple and showed him a photograph of Mr. Herron. He told the officers that he recognized the man in the photograph and that he had sold the gun to him.

Mr. Herron was indicted on two counts of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Before trial he stipulated that he had previously been convicted of an offense that carried a penalty of more than one year in prison. *See Old Chief v. United States*, 519 U.S. 172, 174 (1997) (in a § 922(g)(1) prosecution the district court must accept defendant's stipulation to the bare fact of a prior felony conviction to avoid unfair prejudice caused by introduction of evidence revealing the nature of the prior offense). At trial the government called eight witnesses to establish the above-recited events. It also proved that both weapons had been transported in interstate commerce, an element of the charged offenses. *See* § 922(g).

Mr. Epple, however, was unable to identify Mr. Herron at trial as the purchaser of the second weapon, the .44 magnum. The district court then struck Mr. Epple's testimony as irrelevant, and at the close of the government's evidence, it dismissed the charge relating to that weapon. *But cf.* Fed. R. Evid. 801(d)(1)(c) (prior statement of trial witness identifying a person is not hearsay); *United States v. Ingram*, 600 F.2d 260, 261 n.* (10th Cir. 1979) (same). As for

the first weapon, the Bersa .380, Mr. Herron's theory of defense was that his possession was "innocent" because it was transitory and for no illicit purpose.

During the examination of Parole Officer Walters, the government offered into evidence Mr. Herron's parole agreement to establish that it was a condition of his parole that he not possess a firearm. Defense counsel objected to the admission of the document, noting that it contained other parole conditions that might prejudice the jury. The district court agreed to redact many of the conditions but did not redact conditions requiring Mr. Herron to report regularly to his parole officer, to allow searches by his parole officer, to submit to drug testing upon request, and not to possess firearms or other deadly weapons. After the redactions defense counsel objected only to the inclusion in the redacted document of the text of the Colorado statute prohibiting possession of firearms by convicted felons.

Much of the testimony of Parole Officer Walters related to the .44 magnum. She explained that authorities were eager to locate it because they believed it was in the possession of a parolee with a history of violence. Expressing concern that the testimony would be understood as saying that it was Mr. Herron who had a violent history, defense counsel objected and moved for a mistrial. The district court denied the motion but instructed the jury to disregard any reference to Mr. Herron's history.

In closing argument the prosecutor attacked Mr. Herron's innocent-possession defense, calling it inapplicable in the circumstances of this case and explaining when, in his view, it might apply. Defense counsel objected to some of the prosecutor's comments as improper "commentary on the jury's verdict." R. Vol. VI at 499. The district court overruled the objections.

The jury convicted Mr. Herron of possessing the Bersa .380. At sentencing, Mr. Herron requested a downward departure on various grounds, including his acceptance of responsibility for his offense. The district court denied the request. Also, it ruled that an enhancement was required by the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because Mr. Herron had three prior state convictions for menacing, *see* Colo. Rev. Stat. Ann. § 18-3-206 (1999) (amended 2000), which qualified as a "violent felony" under the ACCA. The court sentenced Mr. Herron to 235 months' imprisonment, the minimum in the applicable guideline range.

## II.   DISCUSSION

### A.   Evidentiary Rulings

#### 1.   Parole Agreement

During trial the government sought to introduce Mr. Herron's parole agreement to establish that Mr. Herron was aware that it was a condition of his parole that he not possess a firearm. Defense counsel did not challenge that

purpose but objected to the admission of the agreement because he could be prejudiced by other terms of his parole, specifically referring to mental health evaluations, drug and alcohol treatment, and limitations on alcohol consumption. The district court redacted parts of the agreement but left intact both Condition 4, which required Mr. Herron to report regularly to his parole officer, to allow searches by his parole officer, and to submit to drug testing;[1] and Condition 5, which forbade him from possessing firearms.[2] After the court's ruling, defense counsel objected only to the failure to redact from the agreement the text of Colo. Rev. Stat. Ann. § 18-12-108 (2003), the Colorado statute barring possession of firearms by convicted felons. The district court overruled the objection.

---

[1]Condition 4 stated in full:

Report: Parolee shall make written, and in person, reports as directed by the Parole Officer; and shall permit visits to his place of residence as required by the Parole Officer.
    a. Parolee further shall submit urinalysis or other tests for narcotics or chemical agents upon the request of the Parole Officer, and is required to pay for all tests.
    b. Parolee further agrees to allow the Parole Officer to search his person, or his residence, or any premises under his control, or any vehicle under his control.

Aplt. Br., Ex. 26.

[2]Condition 5 stated in full:

Weapons: Parolee shall not own, possess, nor have under his control or in his custody, firearms or other deadly weapons.

Aplt. Br., Ex. 26.

-7-

Mr. Herron now challenges the inclusion of the text of the Colorado statute, Condition 4, and Condition 5 as violations of Federal Rules of Evidence 403 (relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice) and 404(b) (evidence of prior bad acts may not be admitted to prove the character of defendant to show action in conformity therewith). Because only the first challenge was presented below, we address it separately.

### a. The Colorado Statute

Mr. Herron argues that the text of § 18-12-108 included on the second page of the parole agreement was irrelevant and potentially confusing. We need not resolve whether this portion of the agreement was relevant to Mr. Herron's innocent-possession defense, because any error in its inclusion in the redacted agreement was harmless. "Even if a court has admitted inadmissible evidence . . . a conviction will not be disturbed on appeal if that error is harmless." *United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004). Such an error is harmless if it did not have "a substantial influence on the outcome" of the trial "or leaves one in grave doubt as to whether it had such effect." *Id.* (internal quotation marks omitted). Mr. Herron does not complain about any specific language of the statute. And the substance of the statute—that Colorado law forbids convicted felons to possess firearms—was repeatedly presented to the jury on other

occasions without objection. We simply fail to see how a defendant being tried on a federal charge of being a convicted felon in possession of a firearm suffers unfair prejudice from evidence that such possession also violates state law. Mr. Herron argues that reference to the state statute improperly showed that he was guilty of "other misconduct." Aplt. Br. at 7. But, of course, there was no *other* misconduct—the same act simply violated two virtually identical statutes.

### b. Conditions 4 and 5

In his brief on appeal Mr. Herron challenged the failure to redact Condition 5 from the parole agreement, and at oral argument he challenged the failure to redact Condition 4. Because he raised neither issue in the court below, our review is limited to plain error. *See United States v. Youts*, 229 F.3d 1312, 1320 (10th Cir. 2000). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (internal quotation marks omitted). Ordinarily, an error "affects substantial rights" only if it "affected the outcome of the district court proceedings." *Id.* Even assuming that Mr. Herron can satisfy the first two prongs of the plain-error test, he cannot satisfy this third-prong requirement.

Anything in Conditions 4 and 5 that may have been prejudicial had already been presented to the jury from other sources, including his own attorney. In his opening statement defense counsel referred to Mr. Herron's status as a parolee, his urinalysis testing, and the parole agreement's prohibition on his having a gun. Mr. Thares, the first trial witness, testified that he recognized Mr. Herron from his former job at the parole office, where he collected urine samples, including Mr. Herron's, for testing. Defense counsel did not object to this testimony, and questioned Mr. Thares further about urinalysis during cross-examination. Parole Officer Walters testified about the parole search of Mr. Herron's house. In these circumstances, we cannot see how admission of the redacted parole agreement could have affected the verdict. *Cf. Griffin*, 389 F.3d at 1104-05 (admission of parole agreement was harmless error).

### 2.     "Violent History"

The testimony of Parole Officer Walters related in large part to the second weapon, the .44 magnum, and the search for parolee Gary Adamson after the parole officers had received information that it was in his possession. During redirect examination the prosecutor questioned her about the urgency of this search:

> Q:     Ms. Walters, was there a particular factor in this case that gave an immediacy to parole's role in the investigation?
> A:     Yes, there was. There was a public safety factor of a parolee with a violent history possibly in possession of weapons.

Q: And when you believed that Mr. Adamson may have been in possession of a weapon, it is then that you took the steps that you recounted?
A: Do you mean Mr. Herron?
Q: No, the focus on what Mr. Adamson and why didn't you focus on Mr—

R. Vol. V at 297. Defense counsel moved for a mistrial, arguing that Parole Officer Walters had just told the jury that Mr. Herron had a violent history, which was highly prejudicial. The district court denied the motion but instructed the jury, "Ladies and gentlemen, I have stricken from the record and taken entirely out of the case any reference to Mr. Herron's history, any reference at all in that respect as testified by this witness, and you will disregard it entirely." R. Vol. V at 298.

We review for abuse of discretion the denial of a motion for mistrial. *See United States v. Kravchuk*, 335 F.3d 1147, 1154 (10th Cir. 2003). "A mistrial may only be granted when a defendant's right to a fair and impartial trial has been impaired." *Id.* at 1155. As we read the record, the "parolee with a violent history" was Mr. Adamson, not Mr. Herron. The previous eight pages of testimony focused on Mr. Adamson, not Mr. Herron. Moreover, the district court immediately instructed the jury to disregard any reference to "Mr. Herron's history." R. Doc. V. at 298. "We presume that jurors will follow clear instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong

-11-

likelihood that the effect of the evidence would be devastating to the defendant."

*United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (internal quotation marks omitted). We see no reason to reject the presumption in the circumstances presented here. The district court did not abuse its discretion in refusing to grant a mistrial. *See United States v. Maynard*, 236 F.3d 601, 606-07 (10th Cir. 2000) (no abuse of discretion in denying mistrial when judge gave strong curative instruction).

### 3. Closing Argument

Throughout trial Mr. Herron's defense was that he had possessed the Bersa .380 innocently–that is, that his possession was only transitory and for no illicit purpose. Defense counsel sought and obtained the following jury instruction:

> Instruction 18.
>
> It is a defense to the charge of unlawful possession of a firearm that the defendant's possession of the firearm constituted innocent possession.
> Possession of a firearm constitutes innocent possession where:
>
> 1. The firearm was obtained innocently and held with no illicit purpose; and
> 2. Possession of the firearm was transitory, i.e., in light of the circumstances presented there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible.
>
> If you find that the defendant possessed a firearm specified in Count 1 and that possession constituted innocent possession, you should find the defendant not guilty.

-12-

R. Vol. VI at 483-84.

Mr. Herron now contends that the district court should have sustained two objections to statements regarding this defense by the prosecutor during closing argument, and that as a result he was denied his right to a fair trial. While arguing to the jury that Mr. Herron's innocent-possession defense was inapplicable to the facts of the case, the prosecutor said, "This defense was meant for different circumstances. Let's think of an example. If there's a felon"—at which point Mr. Herron objected, saying that the court had "instructed the jury on this defense based on the evidence in this case." R. Vol. VI at 498. The objection was overruled, and the prosecutor continued:

> Let's talk about an example. If there's a felon walking down the street, and he crosses a playground full of children, and he sees in the playground a gun, he picks it up, and he immediately calls the police and says, I found a gun, and turns it over to them. I could understand why in that case the guy had innocent motives and we might consider this defense. We're not even close to that here.
>
> Finally, on this issue, you must find that Mr. Herron—I think it's impossible to find that Mr. Herron acquired the gun innocently. He simply didn't.

R. Vol. VI at 498-99. Mr. Herron now argues that this statement improperly told the jurors that they could disregard Instruction No. 18.

The prosecutor continued the argument by pointing out that Mr. Herron knew from his parole agreement that he was not allowed to handle a gun for any reason, that he willingly and knowingly handled the gun in the store instead of

-13-

asking the clerk to assist Ms. Lynn, and that he did not dispose of the gun immediately after handling it but carried it out of the store and later fired it. The prosecutor then said, "I think that if you acquit on this basis what you are saying is that felons can hold and shoot guns so long as"—at which point Mr. Herron again objected, saying that a "commentary on the jury's verdict" was inappropriate. R. Vol. VI at 499. The district court overruled this objection as well and the prosecutor proceeded:

> What you're saying, if you find this defense applicable, is that so long as there's some basis for concluding that a felon was helping a friend, he can hold a gun even though there's no imminent risk of harm to him or that friend. This is not what Congress intended.
>
> Under the circumstances of this case, as soon as Mr. Herron picked up the gun and held it in his hands, he broke the law.

R. Vol. VI at 500. Mr. Herron did not object further or request a mistrial. He now claims that this second remark was an improper appeal to the "conscience of the community." Aplt. Br. at 12.

When assessing allegations of prosecutorial misconduct, "[w]e must first examine whether the prosecutor's conduct was in fact improper, and if so, then determine whether the error was harmless beyond a reasonable doubt." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1134 (10th Cir. 2004) (internal quotation marks, brackets, and ellipses omitted). We determine whether such an error was harmless beyond a reasonable doubt by considering "the curative acts of the

-14-

district court, the extent of the misconduct, and the role of the misconduct within the case as a whole **.**" *Id.*

We have long held that "[p]rosecutors have considerable latitude to respond to an argument made by opposing counsel." *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999); *United States v. Merryman*, 630 F.2d 780, 789 (10th Cir. 1980) ("It is well settled that the attorney prosecuting the case on behalf of the government is authorized to respond to exculpatory arguments made by defendants during closing arguments."). Most of the prosecutor's comments were proper argument based on the court's instruction. The prosecutor was simply arguing that the innocent-possession defense did not apply to the facts of Mr. Herron's case. The only somewhat troubling comment by the prosecutor was that if the jury adopted the innocent-possession defense, a convicted felon could possess a gun "as long as there's some basis for concluding that [the] felon was helping a friend." R. Vol. VI at 500. It is improper to argue that an acquittal in accordance with the court's instructions would be an unacceptable result. But the prosecutor did not exceed the bounds of propriety. The argument did not challenge the authority of the court's instructions. After pointing to the salient facts that were inconsistent with the innocent-possession defense set forth in the instructions, the prosecutor was trying to emphasize the absurdity of recognizing

the defense in such circumstances. The language used was unfortunate but tolerable in the excitement of final argument.

### 4. Cumulative Error

Mr. Herron urges that we consider the above "errors" cumulatively to determine whether a new trial is warranted. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (internal quotation marks omitted). As the above analysis shows, there was no cumulative error here.

### B. Application of the ACCA

### 1. Violent Felony

Mr. Herron next claims that the district court erred in ruling that a violation of the Colorado menacing statute, Colo. Rev. Stat. Ann. § 18-3-206 (1999) (amended 2000), qualifies as a violent felony under the ACCA. The ACCA mandates a minimum 15-year sentence for a violation of § 922(g) if the violator has three prior violent-felony convictions. *See* 18 U.S.C. § 924(e)(1). Mr. Herron had three state convictions for menacing. We review the district court's ruling de novo. *See United States v. Moore*, 401 F.3d 1220, 1226 (10th Cir. 2005).

The ACCA defines a *violent felony* as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The key phrase here is "threatened use of physical force." The actual use of force is not necessary to make a crime a *violent felony*; all that is required is the *threat* of such force against another's person.

The Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), held that to determine whether a crime qualifies as a violent felony under the ACCA, a court must ordinarily use "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600. *But cf. Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005) (in certain circumstances a court may look to documents and records pertaining to the offense). The Colorado menacing statute reads:

> A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon it is a class 5 felony.

Colo. Rev. Stat. Ann. § 18-3-206 (1999) (amended 2000). The Colorado Criminal Code defines "serious bodily injury" as

-17-

bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

*Id.* § 18-1-901(p) (2003).

Mr. Herron's convictions were undoubtedly for violent felonies. He "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon." *Id.* § 18-3-206. This conduct easily satisfies the requirement of "the threatened use of physical force against the person of another," under the ACCA. 18 U.S.C. § 924(e)(2)(B)(i). "Knowingly placing someone in fear . . . by the use of a deadly weapon" certainly constitutes threatening someone. Mr. Herron argues that menacing cannot be a violent felony because under Colorado law the term *deadly weapon* is defined so broadly as to include a fist, foot, or whiskey bottle, so that menacing includes conduct such as telling someone over the telephone "that one intends to punch or kick them the next day, or within the next few hours, depending on the interpretation of the phrase 'imminent.'" Aplt. Br. at 17. But this observation is beside the point. A threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon. We reject Mr. Herron's argument.

### C. Acceptance of Responsibility

Mr. Herron claims that the district court erred by failing to grant a downward adjustment under the Sentencing Guidelines for acceptance of responsibility. He argues that he is entitled to the adjustment because he admitted his "factual guilt" in pretrial statements to Parole Officer Walters (which he later successfully moved to suppress) and again at his parole revocation hearing. Aplt. Br. at 22.

We review under a clearly-erroneous standard a district court's finding that a defendant is not entitled to such an adjustment. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004). The district court's refusal to grant the downward adjustment is "entitled to great deference on review." *Id*. (internal quotation marks omitted).

Under the Sentencing Guidelines the acceptance-of-responsibility adjustment is to be granted "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1(a) (2004). Application Note 2 states that the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* cmt. n.2. Mr. Herron correctly notes, however, that conviction at trial does not automatically prevent him from seeking the adjustment; in "rare situations" the adjustment may still be granted even though

the defendant has gone to trial. *Id.* Application Note 2 gives an example of such a rare situation: "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.*

The district court found that Mr. Herron did not admit factual guilt. Three elements must be proved to establish a violation of 18 U.S.C. § 922(g)(1): "(1) the defendant was convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm, and (3) possession was in or affecting interstate commerce." *Griffin*, 389 F.3d at 1104. Mr. Herron stipulated only to the first element. The district court found at the sentencing hearing that he had challenged the knowing-possession element of the crime; at no time during the trial did he concede that he had ever handled the gun, carried it out of the store, or fired it. The prosecution accordingly called witnesses to establish these facts, and defense counsel tested their testimony on cross-examination. The district court also found that Mr. Herron "[c]learly and indisputably" challenged the jurisdictional element of both offenses. R. Supp. Vol. I at 10. The government called two witnesses to establish that the guns had moved in interstate commerce. While the prosecution was examining Mr. Atzmiller, the chief financial officer of the manufacturer of the .44 magnum, the court called counsel to the bench, where the following colloquy occurred:

| | |
|---|---|
| THE COURT: | You can go through this unless the defense is willing to stipulate that the pistol in question was transported in and affecting interstate commerce. |
| [DEFENSE COUNSEL]: | I would like to do that, possibly, except I don't think Mr. Herron wants to do it, and I am going to respect his wishes on that. . . . |
| THE COURT: | We'll go through this painful process, I guess. |

R. Vol. V at 309.

Moreover, the court noted that Mr. Herron never claimed that the trial was held only to preserve issues unrelated to factual guilt so that those issues could be appealed. Accordingly, the court determined that the downward adjustment was not warranted. Based on this record, we would find an abuse of discretion if the district court *had* granted the downward adjustment. The district court's determination was certainly not clearly erroneous.

### D.    Prior Convictions

Mr. Herron next claims that the district court violated his Sixth Amendment and Due Process rights when it, rather than the jury, determined that he had three prior violent-felony convictions. This claim is foreclosed by *United States v. Moore*, 401 F.3d 1220 (10th Cir. 2005).

### E.    *Booker* Error

-21-

While Mr. Herron's appeal was pending, the Supreme Court issued its opinion in *United States v. Booker*, 125 S. Ct. 738 (2005). *Booker* held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 125 S. Ct. at 756. "As a result, the . . . mandatory application of the [United States Sentencing] Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence." *Gonzalez-Huerta*, 403 F.3d at 731. The Supreme Court in *Booker* therefore "excised 18 U.S.C. § 3553(b)(1), which made the imposition of a Guidelines sentence mandatory in the vast majority of cases." *Id.* Consequently, federal district courts "are still required to consider the Guidelines in determining sentences, but they are not required to impose a sentence within the Guidelines range." *Id.*

Mr. Herron does not argue that his Sixth Amendment rights were violated by judicial fact-finding; instead, he asserts that the district court erred under *Booker* by sentencing him under a mandatory application of the Sentencing Guidelines. When "the resulting [mandatory] sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction," this court uses the term "nonconstitutional *Booker*

-22-

error" to identify the error. *Id.* at 731-32. Mr. Herron concedes that he did not raise this issue in the district court, so our review is for plain error. *See* Fed. R. Crim. P. 52(b); *Gonzalez-Huerta*, 403 F.3d at 732.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (internal quotation marks omitted). The government concedes the first two prongs of the plain-error test, but argues that Mr. Herron has not met the third or fourth prongs. Because Mr. Herron cannot satisfy the fourth prong of plain-error review, we need not consider the third. *See id.* at 736.

"In an instance of non-constitutional error the standard for satisfying the fourth prong of the plain error test is demanding. A party that fails to raise an argument in the district court must show that allowing a non-constitutional error to stand would be particularly egregious and would constitute a miscarriage of justice." *United States v. Jones*, 425 F.3d 1274, 1276 (10th Cir. 2005) (internal quotation marks and citation omitted). "Whether the district judge would have imposed a sentence lower than the Guidelines range is . . . a key consideration . . . ." *Id.* at 1276 .

Mr. Herron has not met this burden. The district court did comment at the sentencing hearing that it was required to apply the Sentencing Guidelines and

that the nature of Mr. Herron's case involved "some mitigating circumstances." R. Supp. Vol. I at 49. But the district court also described Mr. Herron as "the type of person who quintessimally [sic] should not have possessed this weapon," R. Supp. Vol. I at 35, and noted, "I do have a responsibility to protect the public from an individual who simply refuses or cannot conform conduct to the law." R. Supp. Vol. I at 50. Further, although the district court sentenced Mr. Herron at the bottom of the guidelines range, it gave no indication that it would exercise greater leniency if given the chance. *See United States v. Nguyen*, 413 F.3d 1170, 1184-85 (10th Cir. 2005). "Nothing in the record suggests that were this court to remand, the district judge would not simply reimpose the same sentence, nor does anything in the record suggest any unfairness in the sentencing." *Jones*, 425 F.3d at 1276. "Mandatory treatment of the Guidelines in this case did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1277. Accordingly, we affirm Mr. Herron's sentence.

## III. CONCLUSION

We AFFIRM Mr. Herron's conviction and sentence.