**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CORY DEVON WASHINGTON,

    Defendant - Appellant.

No. 17-6079

———————————————————

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos . 5:16-CV-00763-HE and 5:11-CR-00099-HE-1)**
———————————————————

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Mark A. Yancey, United States Attorney; Ashley Altshuler, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
———————————————————

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HOLMES**, Circuit Judges.
———————————————————

**BALDOCK**, Circuit Judge.
———————————————————

In 2011, Defendant Cory Devon Washington pleaded guilty in the Western District of Oklahoma to two firearm-related offenses. The district court sentenced him to fifteen years' imprisonment under the Armed Career Criminal Act (ACCA).

After *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidated the ACCA's residual clause, Defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Notably, this motion was his second § 2255 motion. The district court dismissed the motion because Defendant did not establish the sentencing court relied on the residual clause for any of his ACCA predicate offenses. Exercising jurisdiction under 28 U.S.C. § 2253(a), we affirm.

I.

In June 2011, pursuant to a plea agreement, Defendant pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possessing an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5845(f). Under the ACCA, a defendant convicted of being a felon in possession of a firearm faces a minimum of fifteen years' imprisonment if the defendant has three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). At the time of Defendant's sentencing, a violent felony was defined as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause); (2) "is burglary, arson, or extortion, involves use of explosives" (the enumerated offense clause); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). § 924(e)(2)(B).

Defendant's presentence investigation report (PSR) recommended an enhanced sentence under the ACCA based on three prior felony convictions: (1) a juvenile

2

adjudication for pointing a weapon; (2) assault and battery with a dangerous weapon; and (3) burglary in the second degree. Defendant objected to the PSR's recommended sentence, arguing only that the juvenile adjudication for pointing a weapon did not qualify as a predicate offense under the ACCA. Defendant argued the adjudication arose from a misdemeanor charge, it was not a conviction, and it was ultimately dismissed. At a sentencing hearing in December 2011, the district court rejected all three arguments and held Defendant's juvenile adjudication qualified as an ACCA predicate offense. Pursuant to the ACCA, the district court imposed the mandatory minimum sentence of 180 months' imprisonment. We affirmed on direct appeal.[1] *United States v. Washington*, 706 F.3d 1215 (10th Cir. 2012). In 2014, Defendant filed a § 2255 motion to vacate, set aside, or correct his sentence, alleging ineffective assistance of counsel. The district court denied this motion, and Defendant did not appeal.

In 2015, the Supreme Court's decision in *Johnson* struck the ACCA's residual clause as unconstitutionally vague but left the elements clause and enumerated offense clause intact. 135 S. Ct. at 2563. The Supreme Court later held *Johnson* is retroactive in cases on collateral review, allowing defendants previously sentenced under the ACCA's residual clause to challenge their sentences. *Welch v. United*

---

[1] We note that a juvenile adjudication can be a "conviction" for the purpose of the ACCA. *See* 18 U.S.C. § 924(e)(2)(C) ("[T]he term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony."); *United States v. Carney*, 106 F.3d 315, 317 (10th Cir. 1997) ("[C]onsider[ing] a defendant's prior juvenile adjudications for sentencing purposes[] is entirely consistent with Oklahoma law.").

*States*, 136 S. Ct. 1257, 1268 (2016). After the Supreme Court decided *Johnson* and *Welch*, Defendant obtained authorization from us to file a second or successive § 2255 motion. In his motion, Defendant argued *Johnson* rendered his ACCA sentencing enhancement unconstitutional as to his three prior convictions. The district court disagreed and held Defendant did not raise *Johnson*-based claims but rather raised *Mathis*-based claims, which were barred.[2] The court then dismissed this second or successive motion pursuant to § 2244. Defendant filed a motion for a certificate of appealability, which the district court denied. Defendant then filed a timely notice of appeal. We granted a certificate of appealability on two issues: (1) whether Defendant's motion satisfied the requirements of § 2244(b); and if so, (2) whether, on the merits, the district court unconstitutionally enhanced Defendant's sentence under the ACCA.

## II.

Defendants who file a second or successive § 2255 motion must pass through two gates before a court may consider the merits of the motion. *See* 28 U.S.C. § 2255(h); *United States v. Murphy*, 887 F.3d 1064, 1067–68 (10th Cir. 2018); *see*

---

[2] *Mathis v. United States*, 136 S. Ct. 2243 (2016) held the modified categorical approach—which allows a court to look at "a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of"—may only be used when a statute lists alternative elements, rather than alternative means. 136 S. Ct. at 2249, 2251. The district court held Defendant's "*Mathis*-based claims" were barred because *Mathis* did not announce a new substantive rule that applies retroactively and Defendant did not obtain authorization to raise a *Mathis* claim. *Mathis* becomes relevant to our inquiry today if and only if, as further explained below, Defendant shows his motion relied on a new rule of constitutional law—*i.e.*, the rule articulated in *Johnson*.

*also Case v. Hatch*, 731 F.3d 1015, 1026–29 (10th Cir. 2013) (adopting the same gatekeeping process but in the context of second or successive § 2254 motions).  At the first gate, a defendant initially must obtain authorization from the court of appeals to file the second or successive § 2255 motion in the district court.  *Case*, 731 F.3d at 1026; § 2244(b)(3).  To obtain this authorization, a defendant must make a prima facie showing that his motion relies on:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h).[3]  The court of appeals must make this determination within thirty days, usually with only the defendant's application (and no response from the government) before it.  § 2244(b)(3)(D); *Case*, 731 F.3d at 1028.  In light of these limitations, the court of appeals' grant of authorization is only a "preliminary determination" indicating the claim has "possible merit to warrant a fuller exploration by the district court."  *Case*, 731 F.3d at 1028 (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

Only after a defendant has made this prima facie showing and obtained authorization may the defendant file a second or successive § 2255 motion.  *Murphy*,

---

[3]  Although § 2255(h) states the claim must "contain" a new rule of constitutional law, this Court has interpreted this to mean the claim must "rely on" or be "based on" a new rule of constitutional law.  *Murphy*, 887 F.3d at 1067 (citing *In re Encinias*, 821 F.3d 1224, 1225 n.2 (10th Cir. 2016)).

887 F.3d at 1067–68; *Case*, 731 F.3d at 1029. Then, to pass through the second gate, a defendant must "back up the prima facie showing . . . with actual evidence to show he can meet this standard." *Case*, 731 F.3d at 1027. If the defendant cannot make this showing, the district court must dismiss the motion without reaching the merits of the defendant's claim. § 2244(b)(4); *Case*, 731 F.3d at 1029. In this case, Defendant passed through the first gate. But at the second gate, the district court found Defendant did not show his motion relied on a new rule of constitutional law and dismissed without reaching the merits. We review the district court's determination *de novo*. *Murphy*, 887 F.3d at 1068.

As explained above, *Johnson* clearly announced a new rule of constitutional law, made retroactive on collateral review. *See Welch*, 136 S. Ct. at 1268. The only question is whether Defendant's claim relies on *Johnson*—that is, whether the district court enhanced Defendant's sentence by relying on the ACCA's residual clause to do so. Vital to answering this question is the burden of proof and the burden of persuasion. Of course, before a defendant can be convicted of a crime, the government bears the burden at trial of producing "proof of a criminal charge beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 361–62 (1970). Then, the defendant may often seek direct review of his conviction. *See* Fed. R. Crim. P. 32(j)(1). "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)); *see also Case*, 731 F.3d at 1027 (noting one of AEDPA's purposes is the interest in

6

finality); *Williams v. United States*, 401 U.S. 675, 690–91 (1971) (Harlan, J., concurring) (explaining the importance of finality in the criminal context). In light of this presumption of finality and legality, if the defendant pursues collateral relief, the burden is on the defendant to establish his claim by a preponderance of the evidence. *See Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995); *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam).

Defendant asks us to lower his burden on collateral review for equitable reasons, arguing he only needed to show "the district court could have relied on the residual clause." Op. Br. at 10. Defendant notes that in many ACCA cases, including his own, the record is often silent as to which of the three ACCA clauses the district court used to sentence a defendant. Accordingly, Defendant argues we should follow the rule first articulated in *Stromberg v. California*, 283 U.S. 359 (1931). *Stromberg* held that where a general jury verdict rests on one of three possible grounds and one of those grounds is unconstitutional, the conviction must be set aside. 283 U.S. at 369–70. We decline to extend the *Stromberg* rule, which has historically only applied to general jury verdicts, to the case before us. *See Zant v. Stephens*, 462 U.S. 862, 881 (1983) (stating the cases that have applied the *Stromberg* rule all involved general verdicts). In the general verdict context, a reviewing court does not have any tools to determine whether a jury's general verdict relied on the unconstitutional ground. *See Stromberg*, 283 U.S. at 368. In *Johnson* cases, however, a court can often determine whether the district court relied on the residual clause in sentencing by looking to "the relevant background legal environment that

7

existed at the time of [the defendant's] sentencing" and the PSR and other relevant materials before the district court. *See United States v. Snyder*, 871 F.3d 1122, 1128–30 (10th Cir. 2017), *cert. denied*, 584 U.S. __ (2018).[4]

Finding Defendant's *Stromberg* argument insufficiently persuasive to deviate from the general rule regarding the defendant's burden on collateral review, we hold the burden is on the defendant to show by a preponderance of the evidence—*i.e.*, that it is more likely than not—his claim relies on *Johnson*. In so doing, we join two of our sister courts. *See Dimott v. United States*, 881 F.3d 232, 240–43 (1st Cir. 2018), *petition for cert. filed*, 86 U.S.L.W. 3453 (U.S. Mar. 8, 2018) (No. 17-1251); *Beeman v. United States*, 871 F.3d 1215, 1221–25 (11th Cir. 2017). *But see United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017) (holding a defendant need only show the sentencing court "may have" relied on the residual clause to establish his claim relies on *Johnson*); *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (same).

With a proper understanding of where the burden lies, we now address whether Defendant met his burden. Defendant argues he can show by a preponderance of the evidence that the sentencing court used the residual clause to enhance his sentence

---

[4] To be clear, *Snyder* answered a different question than the one before us today because the § 2255 motion at issue in that case was not a second or successive motion. *See* 871 F.3d at 1126 n.1 (explicitly stating it was not resolving the issue of when a claim "relies on" *Johnson*). *Snyder* held that a defendant need only "invoke" *Johnson* within one year for the claim to be timely. *Id.* at 1125–26. After finding the defendant filed a timely *Johnson* claim, *Snyder* affirmed—on the merits—the district court's factual finding that the sentencing court did not use the residual clause in sentencing the defendant by looking to the relevant background legal environment and the materials before the district court. *Id.* at 1128–30. Yet, as the leading authority in this circuit on determining if a sentencing court used the ACCA's residual clause in sentencing, *Snyder* is highly relevant to our inquiry today.

regarding his burglary conviction and his pointing-a-weapon conviction. Given the sentencing court did not state upon which clause it was relying, Defendant must show the relevant background legal environment at the time of his sentencing in December 2011 and the record before the sentencing court establish he was sentenced under the residual clause. *See Snyder*, 871 F.3d at 1128–30.[5]

A.

We first consider Defendant's second-degree burglary conviction. "According to the Information, . . . [in] 1994, the defendant kicked in two front doors to a building located in Hobart, Oklahoma, with the intent to steal property from the building," in violation of Okla. Stat. tit. 21, § 1435. ROA Vol. II at 12.[6] Burglary is

---

[5] As to both of Defendant's convictions, the sentencing court could have employed the modified categorical approach when the statutory definition proscribed a range of conduct broader than the ACCA's definition of violent felony. *United States v. Ramon Silva*, 608 F.3d 663, 665, 669 (10th Cir. 2010), *abrogated by Mathis v. United States*, 136 S. Ct. 2243 (2016). That is, the court could have looked beyond "the fact of conviction and the statutory definition of the prior offense" to "charging documents and documents of conviction" to determine whether Defendant's convictions fell within the ACCA's definition of violent felony. *Id.* at 669 (citing *United States v. Hernandez*, 568 F.3d 827, 829 (10th Cir. 2009)).

[6] Defendant's PSR containing this fact—and not the Information itself—was before the sentencing court. Defendant argues relying on the PSR alone would have violated *Shepard v. United States*, 544 U.S. 13 (2005), which limits the type of documents a court may look to when enhancing a sentence under the ACCA's enumerated offense clause for a prior burglary conviction. Thus, Defendant argues, the court must have relied on the residual clause. At the time of Defendant's sentencing, however, this Court had upheld a district court's reliance on a PSR in enhancing a sentence under the ACCA where the PSR was based in part on court records and the defendant did not object to the PSR. *See United States v. Harris*, 447 F.3d 1300, 1305–06 (10th Cir. 2006). As noted above, the relevant part of Defendant's PSR was based on the Information. Furthermore, Defendant did not object to the PSR's description of his Oklahoma burglary conviction, which "created

9

listed in the ACCA's enumerated offense clause. § 924(e)(2)(B). For a conviction to qualify as "burglary" under this clause, it must contain the following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). At the time of Defendant's sentencing, Oklahoma second-degree burglary involving entering a building—*i.e.*, the crime for which Defendant was convicted—fell within *Taylor*'s definition of generic burglary, meaning it qualified as an ACCA predicate under the enumerated offense clause. *See, e.g.*, *United States v. Green*, 55 F.3d 1513, 1515–16 (10th Cir. 1995); *United States v. Hill*, 53 F.3d 1151, 1153–55 (10th Cir. 1995) (en banc). Defendant cites no authority indicating Oklahoma second-degree burglary also qualified under the ACCA's residual clause.[7] Given this background legal environment, "there would have been little dispute at the time of [Defendant's] sentencing that his [Oklahoma second-degree burglary conviction] fell within the scope of the ACCA's enumerated crimes clause."[8] *See Snyder*, 871 F.3d at 1129.

---

a factual basis for the court to enhance his sentence under the ACCA." *Id.* at 1306. Therefore, the district court could have relied on the PSR to determine whether his burglary conviction qualified as an ACCA predicate offense under the enumerated offense clause.

[7] Defendant only points us to non-binding precedent concerning other states' burglary statutes and one Tenth Circuit case—*United States v. Venegas-Ornelas*, 348 F.3d 1273 (10th Cir. 2003)—analyzing whether Colorado first-degree criminal trespass qualifies as a "crime of violence" under 18 U.S.C. § 16(b). As cases like *Green* and *Hill* squarely addressed the issue before the district court, it is highly unlikely the court instead considered these inapposite cases Defendant cites.

[8] This conclusion is the same the district court deduced in Defendant's first, pre-*Johnson* § 2255 motion. In that motion, Defendant claimed ineffective assistance

Therefore, Defendant certainly has not established by a preponderance of the evidence that the sentencing court used the residual clause to qualify his second-degree burglary conviction as an ACCA predicate offense.

B.

Defendant also argues the district court more likely than not relied on the residual clause in determining his Oklahoma juvenile adjudication for pointing a weapon was an ACCA predicate offense. The Government asserts Defendant waived this argument by not raising it at the district court level. The district court did indeed conclude that "Petitioner does not claim that the court relied on the residual clause to determine that the [pointing-a-weapon adjudication] was a violent felony[.]" Supp. ROA at 149. But in Defendant's pro se § 2255 motion, he clearly argued as his "last and final argument" that the district court enhanced his sentence by relying on the residual clause for his pointing-a-weapon adjudication:

> [t]he movants instant Federal sentence of 15 years was applied through the sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)'s residual clause. The government had taken the movants pass [sic] prior convictions previously mentioned [*i.e.*, his burglary conviction and pointing-a-weapon adjudication], and increased his sentence under the "catch-all" definition of "violent felony" contained in the Armed Career Criminal Act's §924(e)(2)(B)'s residual clause.

---

of counsel because his counsel failed to argue his Oklahoma second-degree burglary conviction did not constitute a "violent felony" under the ACCA. The district judge, who was also the judge at Defendant's sentencing, held Defendant's conviction fell within *Taylor*'s definition of "burglary" and was thus an ACCA predicate offense. ROA Vol. I at 199–201.

11

*Id.* at 63. The district court subsequently appointed counsel for Defendant, and counsel submitted a supplemental brief, which explicitly incorporated Defendant's prior pro se § 2255 motion. *Id.* at 69. While "[w]e generally do not consider issues raised for the first time on appeal[,]" *United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002), Defendant raised the issue in his pro se § 2255 motion and not for the first time on appeal. We, therefore, consider his argument.

In 1992, "the defendant willfully, and without lawful cause, pointed a Colt M16 rifle at an Oklahoma Highway Patrol trooper for the purpose of threatening and intimidating him, and with the unlawful, malicious intent to injure the trooper physically, or for the purpose of mental or emotional intimidation." ROA Vol. II at 10. Defendant's case was adjudicated in juvenile court for violating Okla. Stat. tit. 21, § 1289.16, which stated:

> [I]t shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening or with the intention of discharging the firearm or with any malice or for any purpose of injuring, either through physical injury or mental or emotional intimidation or for purposes of whimsy, humor or prank . . . . [9]

---

[9] Defendant notes the factual summary in his PSR did not include "a statutory citation let alone a numerical reference to a specific subsection of the charged statute." Rep. Br. at 9. Thus, Defendant argues the court could not have been certain of the elements of which Defendant was convicted. *Id.* at 8–9. The Addendum to the PSR, however, states "both the probation officer and defense counsel agree that the defendant could have been convicted under one of two possible statutes." ROA Vol. II at 31. It then lists the misdemeanor pointing-a-weapon statute and the felony pointing a firearm statute, Okla. Stat. tit. 21, § 1289.16. *Id.* Given the language in the factual summary of Defendant's PSR tracks almost verbatim the language in § 1289.16 (and not the misdemeanor pointing-a-weapon statute), the court determined Defendant was convicted under § 1289.16. ROA Vol. I at 112–14.

§ 1289.16 (amended 1995).

Defendant argues the district court more likely than not relied on the residual clause in classifying this adjudication as an ACCA predicate offense because the background legal environment at the time of Defendant's sentencing reveals "the residual clause offered the path of least analytical resistance." Rep. Br. at 6. Defendant notes many "low-level crimes," such as eluding a police officer, discharging a firearm at an occupied building or vehicle, and failing to stop at the command of a police officer, fell within the scope of the residual clause. *Id.* (citing *United States v. Thomas*, 643 F.3d 802 (10th Cir. 2011); *United States v. Ford*, 613 F.3d 1263 (10th Cir. 2011); *United States v. Wise*, 597 F.3d 1141 (10th Cir. 2011)). Defendant argues since these crimes fell within the residual clause, the district court likely concluded Defendant's pointing-a-weapon conviction did as well.

The relevant background legal environment at the time of Defendant's sentencing, however, included more than just a broadly defined residual clause. It also included two cases that analyze statutes similar to the Oklahoma pointing-a-weapon statute: *United States v. Herron*, 432 F.3d 1127 (10th Cir. 2005), and *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010). In *Herron*, we held the Colorado menacing statute, which involved "knowingly plac[ing] or attempt[ing] to place another person in fear of imminent serious bodily injury . . . . by the use of a deadly weapon," fell within the elements clause. 432 F.3d at 1137–38 (citing Colo.

Considering this statute and the factual summary in the PSR, the court could have indeed determined the elements of the crime of which Defendant was convicted.

Rev. Stat. Ann. § 18-3-206 (1999) (amended 2000)). In so doing, we noted "[t]his conduct easily satisfies the requirement of 'the threatened use of physical force against the person of another,' under the ACCA." *Id.* at 1138 (citing 18 U.S.C. § 924(e)(2)(B)(i)). In *Ramon Silva*, we held the New Mexico "apprehension causing" aggravated assault statute, which "requires proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a weapon 'capable of producing death or great bodily harm,'" also fell within the elements clause. 608 F.3d at 670 (citing N.M. Stat. § 30-1-12(B)); *see also* N.M. Stat. § 30-3-5. We explained that threatening a victim with a weapon "threatens the use of '*violent* force' because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future." *Id.* (quoting *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010)).

As Defendant pointed a rifle at a trooper "for the purpose of threatening and intimidating him," ROA Vol. II at 10, *Herron* and *Ramon Silva* would have supported the district court's decision to consider this crime under the elements clause.[10] In

---

[10] We also note that, at the time of Defendant's sentencing, we had affirmed a district court that held Okla. Stat. tit. 21, § 1289.16 qualified as a "violent felony" under the elements clause. *United States v. Brothers*, 438 F.3d 1068, 1074 (10th Cir. 2006), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009). Even though the defendant in that case did not challenge the district court's conclusion that the statute "clearly has as an element the threatened use of physical force against another person" on appeal, we nonetheless noted that we did not "perceive any error in the [district] court's analysis" on that point and affirmed. *Id.* Given the defendant had not argued § 1289.16 did not fall within the elements clause, this statement was dictum and would have only had persuasive value to the sentencing court. *See Obiter Dictum*, Black's Law Dictionary (10th ed. 2014) (defining dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is not necessary to

14

fact, three years after Defendant's sentencing, this Court relied on *Herron* to conclude that a conviction for pointing a firearm "for the purpose of threatening and intimidating" another person under § 1289.16 qualified as an ACCA predicate offense under the elements clause. *United States v. Hood*, 774 F.3d 638, 645–46 (10th Cir. 2014), *abrogated by Mathis v. United States*, 136 S. Ct. 2243 (2016). This was the exact same offense Defendant committed. *Compare Hood*, 774 F.3d at 646 (stating the defendant "willfully, knowingly, and without lawful cause, pointed a .45 caliber ACP at [someone], for the purpose of threatening and intimidating him and with the malicious and felonious intent to injure [him] either physically or by mental and emotional intimidation"), *with* ROA Vol. II at 10 (stating Defendant "willfully, and without lawful cause, pointed a Colt M16 rifle at [a trooper] for the purpose of threatening and intimidating him, and with the unlawful, malicious intent to injure the trooper physically, or for the purpose of mental or emotional intimidation"). While *Hood* was, of course, not a part of the background legal environment at the time of Defendant's sentencing, *Hood* faced a nearly identical legal environment as Defendant's sentencing court. *See Hood*, 774 F.3d at 645–46 (citing only one Fourth Circuit case decided after Defendant's sentencing in the relevant discussion). *Hood* is thus relevant in that it indicates the law at the time of Defendant's sentencing would have allowed the district court to determine Defendant's conviction under § 1289.16 fell within the elements clause.

---

the decision in the case and therefore not precedential (although it may be considered persuasive)").

15

Even though the district court could have legally relied on the elements clause, Defendant argues *Curtis Johnson v. United States*, 559 U.S. 133 (2010), renders it unlikely the district court did so without some discussion of how Oklahoma state court decisions interpreted the pointing-a-weapon statute. In *Curtis Johnson*, the Supreme Court interpreted the element clause's "physical force" as requiring "*violent force*—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. In so doing, the Court noted it was bound by a state's highest court decisions interpreting state statutes. *Id.* at 138. This holding, however, does not necessarily mean that a court *must* discuss state court decisions before relying on the elements clause. *See, e.g.*, *Hood*, 774 F.3d at 643–47 (not discussing any state court decisions but concluding the conviction fell within the elements clause). Therefore, the sentencing court's lack of discussion about Oklahoma state court decisions interpreting the pointing-a-weapon statute does not make it more likely that the court relied on the residual clause.

In short, neither the relevant background legal environment nor the materials before the district court reveal that the court more likely than not used the residual clause for either conviction in sentencing Defendant. Thus, Defendant has not established by a preponderance of the evidence that his motion "relies on" *Johnson*. Because Defendant has not satisfied the gatekeeping requirements of § 2244, we need not reach the second issue on which this Court granted COA. Accordingly, the district court's order is AFFIRMED.

16