**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

THOMPSON CHRISTOPHER KYLE
MANDRELL,

    Defendant - Appellant.

No. 25-7046
(D.C. No. 6:17-CR-00023-RAW-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Thompson Mandrell lived in a halfway house while serving the supervised-release portion of his criminal sentence. A condition of his supervised release required him to follow the halfway house's policies. The district court found he violated that condition based on evidence that he had sexually explicit material on his phone against halfway-house policy. This appeal requires us to decide if the court erred in making that finding. We conclude it did not.

---

[*] We have honored the parties' request for a decision without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This decision is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

I

Mandrell pleaded guilty to a federal crime in 2017. He received a prison sentence followed by a term of supervised release. Shortly after leaving prison for supervised release, he moved into the halfway house. One condition of his supervised release required him to "follow all policies and procedures during his stay at the halfway house." R. vol. 1 at 16. And one of the halfway house's policies prohibited "sexually explicit material on the premises" or in residents' possession. R. vol. 2 at 53.

After Mandrell had spent several months at the halfway house, the probation office alleged he had viewed sexually explicit material on his phone, violating the halfway-house policy and, in turn, the supervised-release condition requiring compliance with the policy. At the revocation hearing, a probation officer explained that Mandrell had monitoring software on his phone that allowed the officer to view the phone's contents. Using this software, the officer had viewed images on Mandrell's phone of "cartoon depictions of minors engaging in sexually explicit conduct." *Id.* at 39. One image, for example, depicted a "prepubescent blonde female child passed out" while an adult male put "his penis into her mouth." *Id.* at 41. The officer estimated that he saw 800 to 1,000 "obscene" images on Mandrell's phone. *Id.* at 38.

At the end of the hearing, the district court found that Mandrell had violated the condition requiring him to follow the halfway house's policies. The court revoked supervised release.

II

Mandrell says the district court erred in several ways when it found he violated the supervised-release condition.  Most of his arguments assert that insufficient evidence supported the finding.  In addition, he suggests the court committed legal error by deferring to the halfway house's claim of a policy violation and by failing to make a specific finding that images on his phone were sexually explicit.

We review a decision to revoke supervised release for an abuse of discretion. *United States v. Williams*, 106 F.4th 1040, 1044 (10th Cir. 2024).  A court can abuse its discretion in two ways relevant here—by committing legal error and by relying on a clearly erroneous factual finding.  *See United States v. Alfred*, 982 F.3d 1273, 1279 (10th Cir. 2020).

A

We start with Mandrell's challenges to the sufficiency of the evidence.  A court may revoke supervised release if it finds by a preponderance of the evidence that the defendant violated a release condition.  *See* 18 U.S.C. § 3583(e)(3).  The preponderance-of-the-evidence standard is satisfied when a fact is more likely than not.  *See United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018).  We view the evidence in the light most favorable to the district court's finding.  *See Williams*, 106 F.4th at 1047.  In short, we ask whether any rational factfinder could have found a violation by a preponderance of the evidence.  *See United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010).

3

Mandrell first complains that the court never admitted the images themselves, only descriptions of them.  The images themselves were necessary, Mandrell says, "to show the officer's testimony was accurate."  Aplt. Opening Br. at 12.  Not so.  The district court was free to credit the officer's testimony describing the images with or without corroboration.  *See United States v. Flechs*, 98 F.4th 1235, 1243 (10th Cir. 2024) (deferring to the factfinder's credibility determinations).[1]

Even if a mere description of images could suffice in some theoretical case, Mandrell contends, it did not suffice here.  He highlights the government's failure to present testimony that he himself downloaded the images, viewed them, or even used the phone at all.  Those missing pieces matter, he insists, because he lived in a halfway house, an environment affording many other residents access to his phone.  This argument crumbles under our standard of review.  Granted, it is at least possible that another resident downloaded the prohibited images to Mandrell's phone without his knowledge.  But that possibility did not foreclose a conclusion that Mandrell himself more likely than not downloaded the images.

For similar reasons, Mandrell can obtain no relief from the officer's reliance on monitoring software.  Mandrell underscores that the officer never searched the phone itself; he viewed its contents only through the monitoring software.  On top of

---

[1] To the extent Mandrell argues the court erred by crediting a report from the halfway house, that argument fails for the same reason—our review does not permit us to second-guess the court's credibility determinations.  *See Flechs*, 98 F.4th at 1243.

that, he says, the government offered no evidence that the software worked correctly. But speculation that the software may have malfunctioned did not prevent a conclusion that Mandrell more likely than not possessed the images.

Targeting the images themselves, Mandrell insists the government failed to prove they "met the legal definition of sexually explicit." Aplt. Opening Br. at 21. But the officer recited the halfway-house policy twice, neither time mentioning a legal definition (or any definition at all) of the phrase *sexually explicit*. That testimony, in the light most favorable to the court's finding, shows that the halfway-house policy employed the common meaning of the phrase. And ample evidence supports a finding that the images on Mandrell's phone were sexually explicit under the common understanding of that phrase.

Mandrell also urges us to reverse on the theory that the government failed to prove the images were added to his phone after he installed the monitoring software. This argument fails twice over. First, the officer's testimony supports a conclusion that all of the images were downloaded after the monitoring software had been installed. *See* R. vol. 2 at 60–61. Second, even if the images were on the phone before Mandrell installed the software, it would not matter. The halfway house prohibited residents from *possessing* sexually explicit material; it makes no difference when a resident acquired the material.

At bottom, Mandrell identifies many ways the prosecution's case could have been stronger. Gaps in the prosecution's case "can certainly be raised by defense counsel in closing argument. But we have never required the prosecution to present a

5

perfect case.  Reasonable people can make reasonable findings by the preponderance of the evidence despite our living in an imperfect world." *Williams*, 106 F.4th at 1049.  In this case, the probation officer's testimony permitted the district court's finding by a preponderance of the evidence that Mandrell violated the condition requiring him to follow the halfway house's policies.[2]

B

We turn now to what appear to be claims that the district court committed legal error.  We review legal questions de novo.  *Williams*, 106 F.4th at 1044.

1

The halfway house issued a report outlining Mandrell's violations of its policies.  As part of its oral ruling, the district court mentioned the report's allegations and then said, "So I am finding that at this hearing it has been established that he did violate" the condition requiring compliance with halfway-house policies.  R. vol. 2 at 64.  Mandrell contends that the district court "abdicated its judicial responsibility by deferring to the halfway house's determination" that he violated its policies.  Aplt. Reply Br. at 9.  In his view, the court failed "to independently evaluate whether" the images on his phone violated the halfway house's policies.  *Id.*

---

[2] The government presented evidence that Mandrell violated other halfway-house policies aside from the one prohibiting the possession of sexually explicit material.  But the parties focus on the policy prohibiting that material, so we will too.  Given our conclusion that sufficient evidence supports the finding that Mandrell violated that policy, we need not consider whether the government presented sufficient evidence that he violated other halfway-house policies.

The record refutes this argument.  True enough, a court may not outsource its factfinding duties to a halfway house.  *See* § 3583(e)(3) (authorizing revocation if *the court* finds a violation).  But that did not happen here.  The court made clear that it reached its own decision "based on the testimony and the evidence from the" halfway house.  R. vol. 2 at 76.

2

Mandrell contends the district court erred by finding a violation without making an antecedent finding that the images on his phone were sexually explicit.  Yet he points to no authority requiring such an antecedent finding.[3]  In any event, the finding is implicit in the ultimate finding of a violation.  It is unsurprising that the court never addressed whether the images were sexually explicit.  After all, Mandrell never took the position at the revocation hearing that the images were not sexually explicit.  And for good reason:  That position would have strained credulity given the descriptions of the images.

---

[3] Contrary to Mandrell's suggestion, *United States v. Caraballo* offers no support for his position.  *See* No. 24-5029, 2025 WL 1013449 (10th Cir. Apr. 4, 2025).  *Caraballo* faulted a court for failing to make required findings before *imposing* a certain supervised-release condition.  *Id.* at *2–3.  The case says nothing about a court's obligations before finding a supervised-release violation.

\*　　\*　　\*

The district court's judgment is affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge